UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CONGREGATION JESHUAT ISRAEL, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    C.A. No. 12-822M |
| | : |
| CONGREGATION SHEARITH ISRAEL, | : |
| | : |
| Defendant. | : |

**CONGREGATION SHEARITH ISRAEL'S OPPOSITION TO
PLAINTIFF'S MOTION TO PRECLUDE DEFENDANT'S USE OF
CERTAIN PRODUCED DOCUMENTS**

Defendant Congregation Shearith Israel ("Shearith Israel") respectfully submits this memorandum in opposition to the November 19, 2014 motion (the "Motion") of plaintiff Congregation Jeshuat Israel ("CJI") to preclude the use of any and all documents produced by Shearith Israel on October 24, 2014 (the "Production").

**PRELIMINARY STATEMENT**

During the parties' conference with the Court on September 23, 2014, the Court (i) permitted CJI to amend its Complaint to include the affirmative defense of laches, and (ii) set certain parameters for the introduction of expert disclosures and testimony. *See* Ex. 1. Since that time, Shearith Israel has made progress on expert discovery and served expert reports, *see* Exs. 2 and 3, a task that was protracted by CJI's refusal to submit its expert reports first and its refusal to provide meaningful discovery into its laches defense. Shearith Israel also propounded additional discovery requests in light of the amended pleading, but received no meaningful response from CJI. *See* Ex. 4. Shearith Israel's experts were therefore forced to anticipate what CJI would do in its "rebuttal" expert

reports, as well as to conduct additional research to refute CJI's new laches defense. Similarly, Shearith Israel's attempts to establish a mutually agreeable trial schedule were met with silence. *See, e.g.*, Ex. 4 at 1; Ex. 5 at 2.

On or around September 29, 2014, during the course of expert examination of the Shearith Israel archives, and six days after CJI was allowed to proceed with its laches claim, one of Shearith Israel's experts uncovered a cache of previously undiscovered documents stored in very old microfilm canisters in off-site storage archives. The documents, like others in this litigation, were largely hand-written and well over 100 years old; they required specialized tools, extensive effort, and significant expense to convert to digital format and review. Shearith Israel worked as expeditiously as possible to produce the documents on October 24, 2014, less than a month after their discovery. Shearith Israel's experts cite to 22 of the produced documents, totaling only 40 pages. Shearith Israel nonetheless produced the entirety of the documents in the interests of time and to ensure completeness of the fact record, as a courtesy to CJI.

CJI now moves to preclude the entirety of the Production, claiming it was untimely because the fact discovery deadline had passed. CJI cites no document request that the Production was responsive to. Nor does CJI identify any Court order that Shearith Israel violated or abrogated to justify the harsh sanction of preclusion. **Most crucially, the Production caused CJI no prejudice, and CJI identifies none.** *See Johnson v. H.K. Webster, Inc.*, 775 F.2d 1, 8 (1st Cir. 1985). CJI blithely contends that the documents "were available to Shearith Israel all along", and that the Production was an irrelevant "document dump" that would needlessly burden CJI. Motion at 1-2. Neither assertion is true, and neither would justify preclusion in the absence of prejudice in any event. Certain of the documents within the Production support Shearith Israel's

long-asserted claims and defenses in this action, are relevant to Shearith Israel's rebuttal of CJI's new laches defense, and are relied upon by its experts. Had CJI met and conferred with Shearith Israel before making its Motion, it would have learned which documents the experts are relying on. Application of the caselaw cited in CJI's own Motion (assuming arguendo that preclusion would even theoretically lie absent a prior court order requiring production) reveals that the "most drastic remedy" of preclusion is inappropriate. Shearith Israel's Production was prompt, reasonable, and consistent with the Court's prior directives. The Court should deny the motion to preclude.

## ARGUMENT

In determining whether preclusion is warranted, assuming arguendo that such a remedy would even lie absent a prior court order requiring production, courts in this Circuit look at (1) the history of the litigation, (2) the proponent's need for the evidence, (3) the justification for the late disclosure, (4) the opponent's ability to overcome any adverse effects resulting from the disclosure, including any surprise or prejudice, and (5) the production's effect on the court's docket. *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003). Each factor militates against precluding the Production in this case.

First, the Court in this matter has emphasized the importance of establishing a complete factual record. Ex. 1 at 2. When CJI petitioned to amend its pleadings over 20 months after it filed them, the Court allowed the amendment, stating:

> my overriding goal in many cases, but this case in particular for a variety of reasons, is to ensure that, as ultimately the fact-finder in this case, that I get all of the facts with all of the legal claims and all of the legal defenses before me and that, that in many ways takes precedence and import over what might otherwise be seen as some procedural obstacles.

*Id.* Now, Shearith Israel seeks in good faith to provide the Court with a complete factual record, while CJI, despite its status as plaintiff, seeks to preclude key facts from evidence.

The Court's reasoning with respect to CJI's proposed amendment sounds with equal force on this motion and should be dispositive.

CJI claims that the history of the litigation necessitates the Production's exclusion merely because "the Court's scheduling order provided for a year of fact discovery" and the Production occurred after this deadline. Motion at 4. This misses the point. Shearith Israel had diligently sought and produced relevant, responsive documents during the fact discovery period. The microfilms at issue here were not located until after the fact production deadline had passed, and it took Shearith Israel's expert to uncover the microfilms. Shearith Israel was diligent to produce the documents it found - it produced all of the newly discovered documents as expeditiously as possible in order to facilitate completeness of the record. Precluding the Production would undermine this Court's ruling on September 23, 2014 by sacrificing factual completeness for the sake of procedural rigidity.

The Production is also in keeping with the parties' past conduct. When Shearith Israel sought CJI's board minutes, CJI refused to select or produce stamped copies in response to Shearith Israel's document requests and instead made its board minutes available en masse at its office in Newport. Ex. 6. Shearith Israel was forced to hire a specialized outside vendor qualified to work with historical documents to digitize the minutes, and, because CJI refused to allow the majority of the documents to be moved off-site, they had to be digitized on site using an expensive mobile processing unit. *Id.* This resulted in the production of 491 documents spanning 7108 pages (CJIB00001 to CJIB07108), or over 500 more pages than the production CJI now seeks to exclude. The significant difference between the episodes is that Shearith Israel was left to pay for the expensive, time-consuming digitization of CJI's minutes, while here, CJI was not forced

to pay for the digitized production of Shearith Israel's additional minutes.

Second, the Production contains documents that bolster Shearith Israel's long-standing claims that it owns the Rimonim and has owned them for centuries. This evidence is material to rebut the newly asserted laches defense, and Shearith Israel's experts have relied upon a number of these documents to support their opinions. *See* Exs. 2 and 3. Had CJI engaged in the customary and proper meet and confer process prior to filing its Motion, *cf.* Fed. R. Civ. P. 37(a)(1), it would have been informed which documents Shearith Israel would use, and how. In fact, Shearith Israel specifically informed CJI of the documents it was relying upon shortly after receiving the unexpected Motion, *see* Ex. 5 at 1, but the Motion has still not been modified or withdrawn. Shearith Israel produced the balance of the documents in the interest of time (full review and sorting would have caused significant delay—a concern for both parties) and the completeness of the factual record. If CJI does not want to review the production, that is its choice. It would be an unfair and unjust result if preclusion were ordered because Shearith Israel produced too many documents.

Third, the timing of the Production is justified because the microfilms were not discovered until after the fact discovery cutoff, and once discovered, were produced as promptly as was practicable. Shearith Israel's expert located the films while Shearith Israel was trying to identify evidence refuting CJI's laches defense, which was only put forth after the close of the fact discovery period. *See* Ex. 7. CJI's reliance on *Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188 (1st Cir. 2006), is thus inapposite. *See* Motion at 3. In *Gagnon*, a product liability case, the plaintiff knowingly and inexplicably sat on the linchpin of his claim for nearly half a decade. *Id.* at 193-94. Here, Shearith Israel had previously identified and reviewed significant amounts of documents in its archives,

housing over 300 years of history, and made numerous productions. Shearith Israel's expert was only able to identify the documents in question as potentially discoverable after conducting additional research, necessitated in large part by CJI's amendment. *See* Ex. 7. Shearith Israel produced the documents "as soon as practicable" after they were found, in keeping with the requirements of Fed. R. Civ. P. 26(e). *See Thibeault v. Square D Co.*, 960 F.2d 239, 247 (1st Cir. 1992).

CJI disingenuously claims that Shearith Israel knew of the Production for "some time". Motion at 1. This quotation completely misrepresents Shearith Israel's assertion. What Shearith Israel said is that "[i]t has taken some time to prepare this production given that the majority of these materials were stored on old microfilms requiring specialized tools to convert them to modern digital files." Ex. 7. Nothing in Shearith Israel's words demonstrates improper conduct. Contrary to CJI's charge, Shearith Israel did not withhold the Production for "some time" and then spring it on CJI at the last minute—it digitized and produced these centuries-old hand-written documents promptly following their discovery in the expert disclosure process.

The facts presented here do not warrant preclusion. Courts reserve preclusion for cases in which they find "some evasion or concealment, intentional or not, on the part of the litigant offering the evidence." *Johnson*, 775 F.2d at 8. CJI has shown nothing of the sort. In light of the innocent discovery of the microfilms and the fact that Shearith Israel made every effort to expedite production of all of the documents found by its expert, the timing of the Production was justified, and its completeness evinced a desire on Shearith Israel's part for establishing a full record. Shearith Israel's reasonable, expeditious conduct stands in contrast to CJI's past actions. CJI withheld from its productions - until well into the deposition phase - two crucial sets of board minutes from 2008 and 2009.

*See* Ex. 8.  CJI's withholding was especially egregious because the minutes demonstrate that CJI's own congregants repeatedly challenged the position that CJI owned the Rimonim and opposed their sale.  Ex. 8A at CJI001298; Ex. 8B at CJI001315.

Fourth, the Production will not prejudice CJI.  CJI's claim that reviewing the Production "could delay expert discovery, dispositive motions and even trial" is a red herring.  *See* Motion at 4.  While courts frown upon disclosures made "on the eve of trial", *Thibeault*, 960 F.2d at 246-47, the Court has yet to set a trial date (though we are now asking the Court to do so), and, contrary to its obligations under the Federal Rules, *see* Fed. R. Civ. P. 37(f), CJI has repeatedly ignored Shearith Israel's requests to establish a mutually agreeable trial schedule.  *See, e.g.*, Exs. 4 and 5.  Because CJI has chosen to forego proffering expert reports or testimony as part of its affirmative case, it cannot now claim that its preparation of expert reports was without benefit of this Production.

The documents produced are consistent with previously-produced evidence of Shearith Israel's rightful ownership and control of the Rimonim, and do not introduce new theories or defenses that could surprise or prejudice CJI.  Indeed, CJI does not identify any single document that introduces new theories or defenses.  Its blunderbuss motion just makes Shearith Israel do more work (all of which would have been avoided had CJI engaged in the normal meet and confer process before making its motion) even though the Production will not require CJI to adjust its litigation strategy.  *See, e.g.*, *Johnson*, 775 F.2d at 8-9; *accord* Ex. 1 at 3 (allowing CJI's untimely amendment where "the additional defense [was] consistent with what the defense of that counterclaim has been throughout this case").  On the other hand, preclusion would prejudice Shearith Israel.  The documents in question were discovered less than a week after CJI was allowed to amend its pleadings to add a laches defense, as part of the process of preparing

to refute CJI's new defense. Shearith Israel produced them to facilitate a complete record so that the Court can reach a correct, just result.

Finally, the Production has no effect on the Court's docket. Since a trial date has yet to be set, there is no need to disrupt existing schedules.

## CONCLUSION

For the foregoing reasons, the "drastic remedy" of precluding the Production is uncalled for here. Preclusion would undermine the Court's "overriding goal" of establishing a complete factual record and prejudice Shearith Israel by punishing its expeditious, good faith disclosure. Accordingly, the Court should deny CJI's Motion.

CONGREGATION SHEARITH ISRAEL,

By its Attorneys,
/s/ Deming E. Sherman
Deming E. Sherman (#1138)
EDWARDS WILDMAN PALMER LLP
2800 Financial Plaza
Providence, RI  02903
(401) 274-9200
(401) 276-6611
E-mail: dsherman@edwardswildman.com

/s/ Louis M. Solomon
Louis M. Solomon (Admitted Pro Hac Vice)
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY  10281
Tel.:  1 (212) 504-6600
Fax:   1 (212) 504-6666
E-mail: Louis.Solomon@cwt.com

December 8, 2014

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2014, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

/s/ Louis M. Solomon