# EXHIBIT 1

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF RHODE ISLAND

 3       * * * * * * * * * * * *
         CONGREGATION JESHUAT    *    C.A. NO.  12-822
 4       ISRAEL                  *
                                 *
 5       VS.                     *    SEPTEMBER 23, 2014
                                 *    10:00 A.M.
 6       CONGREGATION SHEARITH   *
         ISRAEL                  *
 7       * * * * * * * * * * * *      PROVIDENCE, RI

 8            BEFORE THE HONORABLE JOHN J. MCCONNELL, JR.

 9                             DISTRICT JUDGE

10                         (Chambers Conference)

11       **APPEARANCES**:

12       FOR THE PLAINTIFF:     STEVEN E. SNOW, ESQ.
         (by telephone)         Partridge, Snow & Hahn LLP
13                              40 Westminster Street
                                Suite 1100
14                              Providence, RI  02903

15                              JONATHAN M. WAGNER, ESQ.
                                TOBIAS B. JACOBY, ESQ.
16                              Kramer, Levin, Naftalis & Frankel
                                LLP
17                              1177 Avenue of the Americas
                                New York, NY  10036
18
         FOR THE DEFENDANT:     DEMING E. SHERMAN, ESQ.
19       (by telephone)         Edwards, Wildman Palmer LLP
                                2800 Financial Plaza
20                              Providence, RI  02903

21                              LOUIS M. SOLOMON, ESQ.
                                SOLOMON B. SHINEROCK, ESQ.
22                              Cadwalader, Wickersham & Taft LLP

23       Court Reporter:        Debra D. Lajoie, RPR-FCRR-CRI-RMR
                                One Exchange Terrace
24                              Providence, RI 02903

25                  Proceeding reported and produced by
                          computer-aided stenography
```

```
1                23 SEPTEMBER 2014 -- 10:00 A.M.
2                THE COURT:  Good morning, folks.  Special thanks
3     to Barbara for her outstanding telephonic skills.  Just
4     so that you know, I have my law clerk, Aileen Sprague,
5     with me; and Barbara; and we're also on the record,
6     Deb Lajoie is here taking all of this down.
7                A couple of things:  I have a letter that I want
8     to address concerning the experts, and I have the
9     motion to amend the answer to the counterclaim that was
10    filed.  Let me just say that my overriding goal in many
11    cases, but this case in particular for a variety of
12    reasons, is to ensure that, as ultimately the
13    fact-finder in this case, that I get all of the facts
14    with all of the legal claims and all of the legal
15    defenses before me and that, that in many ways takes
16    precedence and import over what might otherwise be seen
17    as some procedural obstacles.
18               And that's what motivates me in this case in
19    particular on the two issues that are before me.  I
20    don't -- you know, we haven't had many disputes, and I
21    compliment the attorneys for conducting what must have
22    been incredible discovery without primarily needing the
23    Court's intervention, and I appreciate that.
24               But toward that end, I am going to allow the --
25    and grant the motion to amend the answer.  I think that
```

1  the additional defense is consistent with what the
2  defense of that counterclaim has been throughout this
3  case and that there is no great prejudice that would
4  appear to the Court, as expressed by the opposing
5  parties, that would cause me not to allow it.
6         If there is a need for further discovery because
7  of that ruling, that addition, which I don't
8  particularly currently see, but if that's the case,
9  then folks should talk to each other and see if you can
10 come to some agreement on limited discovery in that
11 regard, and if you can't come to an agreement, let me
12 know and I'll try and resolve the dispute.
13        On the issue of the experts that was addressed
14 in the letter to me of September 15th, a similar
15 philosophy, so to speak, will apply.  And toward that
16 end, it is clear to me that the sequencing of orders of
17 experts requires the Plaintiffs to first submit their
18 experts and their expert reports, giving Defendants a
19 chance to respond to that, and then as you folks have
20 previously agreed to, the chance for rebuttal.
21        And I don't know whether procedural -- I don't
22 mean this pejoratively but games are being played in
23 terms of what's being said and what's not, but it is
24 Plaintiff's obligation in the first instance to list
25 its experts, the Defendants have a right to get those

1   before they have to put forth any of theirs, and then,
2   again, you guys have agreed to rebuttal.
3           So I'm going to ask the Plaintiffs specifically:
4   It's my understanding from this reading that it is not
5   your intent to put forth any experts with regard to any
6   of your claims while reserving the right to put forth
7   an expert if you need to respond to any that the
8   Defendants put forth?  Steve, is that your position?
9           MR. WAGNER:  Yes, it's -- were you directing
10  that to Steve?
11          THE COURT:  No.  To anyone, anyone for the
12  Plaintiffs.  I just picked on Steve because he's
13  closest.
14          MR. WAGNER:  You always pick on Steve.
15          This is Mr. Wagner.  You know, we're not looking
16  to play games.  We don't believe that an expert is
17  required to make out -- for the Plaintiff to sustain
18  its burden of proof as to any claim for which it has
19  the burden of proof.  But we do reserve the right, and
20  the parties have provided for this in the schedule, to
21  rebut and only to rebut any expert that the Defendant
22  may put forward.
23          And I'll just give you one example.  The
24  Defendants may put in a handwriting expert with respect
25  to some documents.  I have no idea what -- or they may

1   put in an expert witness with respect to some other
2   document, and we would like the right to rebut that
3   expert, I think particularly in a case where the
4   parties, or at least that party is -- actually, both
5   parties are nonprofit religious organizations, which we
6   have an interest in sort of not running up the fees,
7   including the expert fees.
8           So the experts -- because we can't anticipate
9   everything that the other side might put in by way of
10  experts, we do want to reserve the right to rebut any
11  experts that they may have.
12          THE COURT:  Okay.  Deming or anyone on behalf of
13  the Defendants, what's the problem with that?  That
14  seems pretty straightforward to me.
15          MR. SOLOMON:  This is Lou Solomon, Your Honor.
16  And thank you for hearing us so quickly.
17          THE COURT:  Oh, yeah, no problem.
18          MR. SOLOMON:  It was in fact because it was our
19  our instinct that Your Honor would want to resolve this
20  whole matter that we sent the letter in the first
21  place.  Look, I could take yes for an answer, but I
22  don't believe it.  You can't look at a page of their
23  complaint without seeing that they need experts, but if
24  what -- if they're going into ancient documents, going
25  into ancient course of dealings, there's nobody alive

1  who can begin to carry their burden.  And so it is
2  because at least our side is doing this pro bono, we
3  are trying to keep costs down, that we kind of wanted
4  them to be the Plaintiff, go first as they're required
5  to do and we could then respond.
6        What's going to happen now is that we have to
7  anticipate what it is they're actually going to do
8  because, as I say, they're not going to try this case
9  without experts and then have to have our experts
10 anticipate that, then they will go, and then our
11 experts are going to then have to respond because I'm
12 sure they're not going to get everything right.
13       And so rather than our having to go twice, I
14 kind of wanted to have us go once.  If Your Honor --
15 you see, I'm worried because I think Your Honor wants
16 to get at the truth and get to the answer and -- and
17 what's going to happen, at the close of their case,
18 they're not going to have an expert, they're not going
19 to put any evidence on, no opinion evidence is going to
20 come in to their case, we are going to stand up, we're
21 going to move to dismiss that case, and I think there's
22 going to be a reluctance, just as Your Honor wants to
23 get at the substance of this, there's going to be a
24 reluctance at that point to hold them to their proof,
25 and that's what worries me.

1         THE COURT:  Well, let me say this, Lou:  The
2    parties are going to live with what their
3    representations are and what the law is.  So I
4    understand your concern, I understand your analysis.  I
5    don't know the case the way you folks do, obviously, as
6    to whether experts would be required or not, but I'm
7    going to tell the Plaintiffs this, and this is clear:
8    If a deadline goes by for the Plaintiffs to submit
9    their experts report and they don't and the Defendants
10   submit certain expert reports on rebuttal, I'm going to
11   hold you tight to the fact that those expert reports
12   have to be rebuttal to the Defendants and not give you
13   much leeway in that regard in light of this.
14         I have no problem in this kind of case giving
15   you whatever time you folks want and then I hope you
16   could agree to it, to the Plaintiffs for putting in
17   expert reports.  But if you're saying that you're
18   satisfied with your case-in-chief without expert
19   reports, then that's fine, unlike Lou, I'll believe
20   you, and we'll go forward, and the Defendants will do
21   what they need to do.
22         But when rebuttal time comes and the Defendants
23   come to me and say, These rebuttal expert reports from
24   the Plaintiffs are really, you know, a wolf in sheep's
25   clothing, and we're actually -- they're reports that

1  they lied in wait until after they saw ours, I'm going
2  to hold that to a pretty strict standard.
3         Now, here's what I'll do, and we can talk about
4  this more if you want, but it seems to make more sense
5  for you folks to think about this, make some decisions
6  from the Plaintiffs if you want to stick with the "no
7  initial expert reports."  If you want to change your
8  mind, I'll give you a reasonable amount of time to do
9  it and obviously extend the Defendants the time that
10 they need.  But I think that makes the most sense on
11 how we should proceed from here.
12        MR. WAGNER:  That's fine, and --
13        THE COURT:  Is this Jonathan?
14        MR. WAGNER:  Yes.
15        THE COURT:  Okay.
16        MR. WAGNER:  Yes.  And if they still intend to
17 have no experts, then we're not going to have -- if
18 he's not going to put in any expert, obviously, there
19 will be nothing for us to rebut and the case will be
20 tried without experts.
21        THE COURT:  With Lou's caveat that he thinks
22 that they may have a legal basis for dismissing the
23 case if you don't have expert reports, so there's going
24 to be that caveat in between.  I think that's what Lou
25 said.

```
 1            MR. WAGNER:  Right.  And you know, we have a
 2   disagreement with him on that, on the legal issue; that
 3   is, whether we need an expert.
 4            THE COURT:  Right.  But just so we're clear,
 5   Jonathan, there's going to be no do-over, so that if
 6   you choose not to put experts report, Defendants make
 7   whatever decision they do, whether to put them in or
 8   not and it comes before me and the argument is, you
 9   know, Plaintiffs fail as a matter of law because they
10   can't prove X, Y and Z, which are required to be
11   proved, because they don't have expert reports, I'm not
12   going to entertain, If you think that and give us time
13   to come up with expert reports.  I think this has all
14   been too clear and too upfront to allow that to happen.
15            MR. WAGNER:  Right.  We'll reflect on that.
16            THE COURT:  Okay.
17            MR. WAGNER:  And I think we can work out amongst
18   the four firms involved, you know, what the
19   sequencing -- what the timing should be.  I know
20   Mr. Solomon wanted more time.  Let's assume we don't
21   put in an expert, he wanted more time to put in his
22   expert report beyond the date that's set in
23   Your Honor's order, and we can do that as long as we
24   have the right amount of time on rebuttal.  It may
25   require some adjustment of -- Your Honor put in a
```

1    summary judgment deadline.
2           THE COURT:  Yeah, we can -- Jonathan, we can
3    move any of those.  This case has moved, since we
4    actually started in the substance of it, rather
5    smoothly and expeditiously, from the Court's point of
6    view.  I don't know what's being been going on behind
7    the scenes.  I hope it's been as smooth as I've
8    observed.
9           I have no problem giving you whatever time you
10   need.  As I said, this case is far too important to
11   both parties, and it's far too at least initially
12   fact-driven not to give you the time.  I don't want my
13   hands tied because folks didn't have the time to get
14   facts or expert opinions in before me, so why doesn't
15   everyone take a step back, think about this, confer
16   with each other, Plaintiffs decide how they want to
17   proceed vis-a-vis experts, regardless of what decision
18   you make, come up with a schedule both for you, the
19   Plaintiffs' rebuttal and summary judgment that makes
20   sense and submit, you know, an agreed-to scheduling
21   order and we'll follow that.
22          MR. WAGNER:  Right.  That's fine.  But just to
23   recap, if we don't put in an expert report, then the
24   other side is obviously free to put in its expert
25   report, and our expert will be limited, obviously,

1     solely to rebuttal.
2             THE COURT:  Correct.
3             MR. SOLOMON:  Solely to rebuttal, Your Honor --
4     this is Lou, and I am hearing Your Honor loud and
5     clear, and we thank Your Honor.  Solely to rebuttal,
6     but affirmative relief is not going to be available to
7     them by dint of an expert that they put in, in
8     rebuttal.
9             THE COURT:  That could well be.  I mean, I
10    can't -- that's something for you guys to discuss in
11    how you want to proceed in your case.  I can't make a
12    ruling and force them at this stage to put an expert
13    report in.  I couldn't even decide that because I don't
14    know the case well enough to make the decision on
15    what's required or not at this stage.
16            But it is very clear from what I said that, you
17    know, failure to put forward an expert report is at
18    your own peril, and I -- you know, we've got some of
19    the finest attorneys that I've had the privilege to
20    have appear before me, from what I've seen from what
21    you folks having submitted, and I'm fully confident
22    that you both know how to represent your clients
23    properly, and we'll deal with the consequences of that
24    now that there is full disclosure and everybody is
25    fully aware of the consequences because, again, I'm not

1  going to decide this case on procedural technicalities,
2  but on this issue, seeing it's been very upfront and I
3  have afforded everyone all the opportunity they want, I
4  am going to hold people to this time commitment.
5          MR. SHINEROCK:  Your Honor, this is
6  Solomon Shinerock, and thank you for guidance on the
7  amendment.  We will, I believe, pursue some limited
8  focus discovery and can work an appropriate schedule --
9          THE COURT:  Okay, great.  Can you just say the
10 end part of that, Solomon?  Deb didn't get it down.
11         MR. SHINEROCK:  Sure.  We'll work -- I have
12 every confidence we'll be able to work out something
13 appropriate with the other side, and we'll submit that
14 as part of an overall scheduling adjustment to the
15 Court.
16         THE COURT:  Great.  I mean, if it's not clear by
17 now, you know, within reason, I'm certainly going to
18 follow anything that you folks come up with.  So work
19 out what you think you need for your clients, meet with
20 each other, come up with a reasonable scheduling order
21 that makes sense and send it in.  If for some odd
22 reason that you can't come to that kind of agreement in
23 light of everything that's been said, then submit
24 competing letters to me, and I'll resolve it.  But I
25 don't see any reason, in light of everything that's

```
 1    been said, that you folks shouldn't be able to figure
 2    out what your needs are timing-wise and what the
 3    sequence of that should be.
 4              MR. SOLOMON:  Thank you, Your Honor.
 5              MR. WAGNER:  Thank you very much.
 6              THE COURT:  All right.  Let me also just add, at
 7    some point, now that we're coming close to the ending
 8    of discovery, if -- Judge Smith has asked me a couple
 9    of times how things were going, and I said, I hope
10    silence is good, but perhaps silence isn't good.  If
11    there comes a point where either or both of you think
12    it would be productive to spend some time with
13    Judge Smith again, let me know, and he would be more
14    than happy to have you folks back in, so I just throw
15    that out for you.
16              MR. SOLOMON:  Yes, we appreciate that.
17              THE COURT:  Okay.  Everyone, thanks.  And if
18    anything else comes up, feel free to either send a
19    letter or call Barbara and we can get back on the phone
20    and resolve things.  Again, I want to make sure that
21    we're focused on the important stuff and that we're not
22    spending either of your client's money or your pro bono
23    services needlessly.  So thanks, folks.
24              MR. SOLONOM:  Thank you.
25              MR. WAGNER:  Thank you.
```

1  (Adjourned at 10:22 a.m.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T I O N

I, Debra D. Lajoie, RPR-FCRR-CRI-RMR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

/s/ Debra D. Lajoie

10/26/14