# EXHIBIT F

**Dr. Vivian B. Mann - Addendum to Expert Report, January 18, 2015**

<u>**CJI v. CSI, No. 12-822-M (D. R.I.)**</u>

The questions asked and issues raised at my deposition do not alter my conclusions or opinions. In part as a result of requests by counsel for CJI, I supplement my earlier report as follows (along with the explanations given in the deposition):

**A) Reimbursements to Myer Myers**

According to entries in the Ledger of the Holy Tsedakah of Congregation Shearith Israel, Myer Myers received payments from the congregation for three reasons. Below are examples of each:

1. Reimbursements for the purchase of specific items for the congregation or for payments on behalf of the congregation. The first thirteen citations on the page below are example of both types of reimbursement.

2. Monies due him as the late [i.e. last] Parnas [President] of Shearith Israel



3. Payment for works in silver made for Shearith Israel:

   a. 1759: "Piece of plate" to be given to Abraham Abrahams for his services to the congregation. £20.

   b. 1764/5 Payment of £36.15.1 [for first pair of rimmonim].

Although no purpose is given for this payment, several factors indicate that the sum represents payment for the first pair of rimmonim ordered from Myer Myers:

1. The date of payment coincides with the date the rimmonim were made

2. The amount of payment equals the estimated costs of a pair of rimmonim:

In 1738/9, CSI paid 9 shilling/3 pence per oz. of silver (CSI minutes) which would mean that the cost of the silver for this pair of rimmonim was approximately

|  |  |
|---|---|
|  | £ 22.0.0 |
| An engraver received 5% of the total cost | £ 1.2.0 |
| The silversmith was due ¼ of the total | £ 9.1.0 |
| The piercer/chaser | £ 4.0.0 |

[These amounts are estimates based on David Barquist's estimates of costs.]

As I explained in my report and deposition (without repeating these prior writing), the amounts are not explicable on any other basis, especially in comparison to other amounts paid to Myer Myers; the language used to describe the second pair of rimmonim; the cost of other silver pieces purchased from Myer Myers; the fact that those at CSI in the next century were familiar with the first set of rimmonim; and the relationship between CSI and CYI in the colonial period.

N.B. CJI has produced no evidence that CYI paid for a set of Myer Myers rimmonim.

    c) 1774: Payment of balance for a second pair of rimonim



## B. Evidence from Photographs

As described in my deposition, further reading in Morris A. Gutstein, *The Story of the Jews of Newport: Two and a Half Centuries of Judaism, 1658-1908* (New York: Bloch Publishing Company, 1936) revealed a hitherto unknown photograph of the finials in the Touro Synagogue that includes the oldest CSI finials, the 1730 pair used at the dedication of the Mill Street Synagogue in New York.

A second photograph published in Gutstein's later book, *To Bigotry No Sanction: a Jewish Shrine in America, 1658-1908* (New York: Bloch Publishing Company, 1956) showing the finials in Newport does not include the 1730 pair, which must have been returned to CSI. There is no published record of when these photographs were taken; their publication dates serve as a terminus ante quem.

The photographs nevertheless may elucidate the statement in the CJI minutes of February 14, 1897 in which it was stated "that a pair of Bells in the Synagogue were claimed as the property of Congregation Shearith Israel of New York and the Board of Trustees of that body made a request that the same be forwarded to them. [CJI] voted to comply with this request." (see Mann, Report, p. 11, fn. 46) More generally, the fact that CSI loaned and took back its rimmonim, and the fact that CSI loaned CJI a "mixed" set of Myer Myers rimmonim, is further proof that both

CSI and CJI understood that CSI had ultimate authority and control over its rimmonim including the Myer Myers pair in Newport. This conclusion is buttressed by the telegram shown me at my deposition, which is believed to date from 1903.

I reserve the right to modify my report, conclusions, and opinions further.

*Vivian B. Mann*

Vivian B. Mann
January 18, 2015