# EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CONGREGATION JESHUAT ISRAEL, | : |
| Plaintiff, | : |
| v. | : C.A. No. 12-822-M |
| CONGREGATION SHEARITH ISRAEL, | : |
| Defendant. | : |

### PLAINTIFF CONGREGATION JESHUAT ISRAEL'S OBJECTIONS AND ANSWERS TO DEFENDANT'S SECOND SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, Plaintiff Congregation Jeshuat Israel ("CJI" or "Plaintiff") hereby submits its objections and answers to the Second Set of Interrogatories served by Defendant Congregation Shearith Israel ("CSI" or "Defendant").

### General Objections

1. CJI repeats and incorporates by reference all General Objections contained in its Objections and Answers to Defendant's First Set of Interrogatories, dated October 31, 2013.

2. CJI objects to the interrogatories on the ground that they are untimely, as the fact discovery cut-off was August 1, 2014 and there is no need for additional discovery concerning CJI's laches defense.

3. CJI objects in whole or in part to each and every interrogatory to the extent it concerns matters on which discovery already was or should have been conducted before the August 1, 2014 fact discovery cut-off.

4. Defendant's assertion of contention interrogatories is inconsistent with its position that discovery has not been conducted in connection with CJI's laches defense.

5. CJI objects to Defendant's definition of the phrase "state the basis," which purports to request that CJI identify (i) "each and every" document and communication, (ii) acts and omissions "by stating their nature, time, and place and identifying the persons involved," and (iii) "any other fact" regarding facts or legal conclusions "referred to by the Interrogatory," as overly broad and unduly burdensome.

## Specific Objections and Answers

INTERROGATORY NO. 1:

State the basis for CJI's affirmative equitable defense of laches, contained in CJI's Amended Answer to Counterclaim filed September 18, 2014, including but not limited to all documents, testimony, or other factual support for the equitable defense of laches.

RESPONSE TO INTERROGATORY NO. 1:

Objection. CJI objects to the form of the interrogatory, which requests that CJI "[s]tate the basis" for its laches defense and "all" documents, testimony, or other factual support on the grounds that it is overly broad and unduly burdensome.

Answer. Without waiving its objections, CJI states as follows:

*Religion*

CSI claims that under an expired 1908 lease and a 1945 agreement concerning the landmark status of the Touro Synagogue building, CJI is contractually obligated to follow the ritual, rites, and customs of the Orthodox Spanish and Portuguese Jews as practiced and observed by Shearith Israel in New York (the "Spanish & Portuguese Rites"). CJI has adhered to particular rites for at least 50 years. (Angel Tr. 30-31, 33, 36, 106; Herstoff Tr. 58; Bazarsky Tr. 85-87; CJI 389; CSI 2739-40). At least for the last 50 years and likely for much longer, CSI has known the rites and practices of CJI. (Angel Tr. 30-31, 32, 35-36, 107-08; Groopman Tr. 26; CJI 389). Yet CSI chose not to press its purported rights and never objected to the way CJI

practices Judaism. (Angel Tr. 13, 32, 35-37, 106-07; Groopman Tr. 25, 27; Katz Tr. 13-14; Herstoff Tr. 84; Bazarsky Tr. 88).

CSI's delay in asserting its purported rights has prejudiced CJI. In the absence of an objection from CSI, CJI has continued to practice Judaism the way it has for generations. While doing so, CJI has spent time, effort and money perpetuating itself. Further, changing its long-standing and well-engrained practices after all these years could result in the loss of members and donations.

Also, evidence has been lost due to CSI's delay in asserting its purported rights. Individuals associated with both CJI and CSI during at least the first half of the 20th Century have died. These individuals could have testified about the negotiations, drafting, and intent of contract provisions upon which CSI now relies, as well as CJI's religious practices and CSI's knowledge of those practices. Documents concerning these and other topics, such as correspondence and memoranda, also may have been lost over the last 100 years.

### *Governance*

CSI claims that CJI is bound by its 1894 by-laws, under which CSI could appoint CSI trustees to the board of CJI. But for at least approximately 100 years, there have been no CSI-appointed trustees on CJI's board. (*E.g.*, Angel Tr. 94, 95; Katz Tr. 27; Herstoff Tr. 84-85; Groopman Tr. 18; Lustig Tr. 92-93; CJI 539; *see generally* the parties' document productions). For generations, CSI has not been involved — and has shown no interest in being involved — in CJI's governance. (CJI 1157-58; *see* Katz Tr. 30-31).

Throughout the last approximately 100 years, CSI knew or should have known that CJI was a functioning congregation and that, as a functioning congregation, it was holding meetings and votes and generally governing itself. Yet CSI never attempted to appoint a trustee to CJI's

board. Although CSI appears to claim that it should have received hundreds of meeting notices over this period pursuant to the 1894 by-laws, neither party produced any such notices. Nor has either party produced evidence of proxy votes during that period. CSI never complained of not receiving notices or otherwise not being given an opportunity to participate in CJI's governance. (Katz Tr. 28, 31; Lustig Tr. 93, 96-97; Herstoff Tr. 85). And CSI never objected to the way CJI has been governed. (Groopman Tr. 25; Angel Tr. 20, 36-37; Katz Tr. 18; Herstoff Tr. 84).

Against the backdrop of CSI's lack of involvement, CJI adopted revised by-laws in January 1945, which among other things did not include provisions (i) permitting CSI-appointed trustees, if any, to vote by proxy and (ii) providing that no alteration or amendment that added to, altered, or affected the status of CSI-appointed trustees could be made to the by-laws without the affirmative vote of any such trustees. (CSI 678-705). CJI sent CSI a copy of the 1945 by-laws, yet there is no evidence that CSI objected to them. (CSI 101). In 1983, CJI adopted amended and revised by-laws that did not provide for CSI-appointed trustees. (CJI 540-60). CSI did not object to these by-laws. (Herstoff Tr. 86). Since 1945, CJI has revised its by-laws eleven times. (CJI 526-39; CJI 540-60; TSF 273-308; CJI 588-628; CSI 727-43; CJI 1362-86).

CSI's delay has prejudiced CJI. Throughout the lengthy period referenced above, CJI did not involve CSI in its governance. CJI's board made countless decisions in that period concerning the governance of the congregation — including by changing its by-laws numerous times, starting back in 1945 — without input or votes from CSI-appointed trustees. (*See generally* CJI's document production).

Also, evidence has been lost while CSI delayed. Individuals associated with CJI and CSI have died. The memories of other individuals have faded. These individuals could have testified about, among other things, (i) changes to the by-laws made in 1945 and/or, to an extent, in 1983,

as well as events leading up to those changes, (ii) CJI's governance over the past 100 years, and (iii) the relationship between CJI and CSI during that time. Further, over the past 100 years, the parties may have discarded documents concerning these and other topics.

*Rimonim*

CSI now claims that it owns the Rimonim and seeks to prevent CJI from selling them, but CSI delayed in asserting its purported rights.

Throughout the last approximately 100 years, published sources repeatedly attributed ownership of the Rimonim (meaning the Myer Myers rimonim currently on display at the MFA) to "Congregation Jeshuat Israel" and/or "Touro Synagogue," which are used synonymously. (Sloane Tr. 16-17, 42, 64-66, 151-55, 159-60, 188-93, 195; E. Alfred Jones, The Old Silver of American Churches 320 & plate XCVI (1913); Jeanette W. Rosenbaum, Myer Myers, Goldsmith 1723-1795 33, 67, 98-100 (Jewish Publ'n Soc'y of Am. 1954); David L. Barquist, Myer Myers: Jewish Silversmith in Colonial New York 154-62, 198-200 (Yale 2001); Anthony Weiss, *Touro Struggles With Its Historic Legacy*, The Forward (May 27, 2009)). There is no evidence that CSI objected to these attributions of ownership.

Similarly, on numerous occasions, CJI loaned the Rimonim to public exhibitions at which CJI publicly held itself out as the owner and/or ownership was publicly attributed to CJI. For example:

- 1955: Rhode Island School of Design (TSF 1384-1400)

- 1965: Jewish Museum, New York (CJIB 1574-84)

- 2001–2002: Yale University Art Gallery; Skirball Cultural Center, Los Angeles; Winterthur Museum, Delaware (Barquist, Myer Myers at 154 & 198; Sloane Tr. 154-55, 159; Pedrick Tr. 75)

- 2004–2006: Library of Congress; Skirball Cultural Center, Los Angeles (www.loc.gov/exhibits/haventohome/haven-haven.html; CJI 841-864)

On at least two of these occasions — at Yale in 2001 and the Jewish Museum in New York in 1965 — the Rimonim were displayed at the same exhibition as CSI's own Myer Myers rimonim, ownership of which was properly attributed to "Congregation Shearith Israel." (CJIB 1574-84; Barquist, Myer Myers at 154). At least one CSI trustee who attended the Yale exhibition saw CSI's rimonim and may have seen CJI's Rimonim there as well. (Katz Tr. 64-67; *see also* Angel Tr. 40-41).

There is no evidence that CJI ever asked CSI for permission to loan the Rimonim to these exhibitions or that CSI ever gave such permission. And although CSI's board voted on whether to loan its own Myer Myers rimonim to the Yale exhibition, there is no evidence that CSI ever objected to the Rimonim being loaned to that or any other exhibition without its permission. Nor is there any evidence that CSI ever objected to attributions of ownership in either museum labels or exhibition catalogues and pamphlets. (*See* Angel Tr. 89; Katz Tr. 65-66, 71, 72, 74; Edinger Tr. 53).

CSI has acted in other ways to suggest that it did not claim ownership of the Rimonim. For example, in or about 1998, CSI asked to be named as an additional insured on insurance covering the Touro Synagogue building, but CSI did not ask to be named as an additional insured on insurance covering the building contents or the Rimonim. (CJI 1067, 1074-76).

Further, CSI was aware as early as 2009 that CJI was attempting to sell the Rimonim. In May or June of that year, the Jewish Forward published an article stating that CJI was making inquiries about potentially selling the Rimonim. (Anthony Weiss, *Touro Struggles With Its Historic Legacy*, The Forward (May 27, 2009)). Michael Katz, a CSI trustee, called Bea Ross, CJI's co-president, to discuss the article. (Katz Tr. 31-33, 37-38, 41-42; Segal Tr. 18, 72, 81, 83-84; Ross Tr. 247-52). Also, CSI's Rabbi "probably" saw the article. (Angel Tr. 100).

CSI witnesses testified that Roy Zuckerberg acted on behalf of CSI when he helped organize, and contributed matching funds to help pay for, the restoration of the Rimonim. (Angel Tr. 84-86; Katz Tr. 94-95). After being approached by CJI in 2008 or 2009 about buying the Rimonin, it was Mr. Zuckerberg — a CSI member — who recommended to CJI that it contact experts, including Christie's, about selling those objects. (Segal Tr. 22-24; CJI 1401-03). CSI nevertheless waited until 2012 to assert its interests and to block any sale of the Rimonim.

CJI has been prejudiced by CSI's delay. CJI consistently has publicly held itself out as the owner of the Rimonin. CJI has cared for the Rimonim by organizing and paying for, among other things, insurance and secure storage. And several CJI board members spent a significant amount of time and effort over a four-year period to explore and negotiate the sale of the Rimonim. (*See* Segal Tr. *passim*; Bazarsky Tr. *passim*; Sloane Tr. *passim*).

Also, evidence has been lost. Individuals associated with CJI and CSI have died. The memories of other individuals have faded. These individuals could have testified about, among other things, (i) the negotiations, drafting, and intent of old documents upon which CSI relies to contend that it owns the Rimonim, and (ii) the reasons why CSI chose not to object when ownership of the Rimonim was attributed to CJI over the last 100 years. Over that period of time, the parties may have discarded documents concerning those topics.

*Rabbis*

CSI claims that, pursuant to the terms of an expired 1908 lease, CSI must approve all CJI rabbis in advance. For decades, CSI itself has not abided by the specific terms of the lease, which purport to require pre-approval in writing by a majority of specific individuals or their successors. (CSI 2). CSI apparently believed that its rabbi — on his own — could provide approval. (Angel Tr. 90-91; Katz Tr. 84-85). Regardless, CJI hired at least its last two rabbis, in

1996 and 2012, without CSI's advance approval. (Angel Tr. 90-91; CJI 1399-1400; Pimental Tr. 42-43, 44-46; CJIB 7054-56; CSI 978).

CSI's delay in asserting its purported rights has prejudiced CJI, which has hired and entered into contracts with rabbis without CSI's advance approval.

INTERROGATORY NO. 2:

State every instance in which CSI was negligent or delayed in asserting its claims.

RESPONSE TO INTERROGATORY NO. 2:

Objection.    CJI objects to the form of the interrogatory, which requests "every" instance on the grounds that it is overly broad and unduly burdensome.

Answer.    Without waiving its objections, CJI states as follows:

CJI repeats and incorporates its answer to Interrogatory No. 1. CJI further states that CSI's negligence and delay was largely continuous and occurred over a lengthy period of time, as described in response to Interrogatory No. 1.

INTERROGATORY NO. 3:

State every instance in which CJI has changed its position in reliance on their alleged belief as to CSI's disposition relating to CSI's claims.

RESPONSE TO INTERROGATORY NO. 3:

Objection.    CJI objects to the form of the interrogatory, which requests "every" instance on the grounds that it is overly broad and unduly burdensome.

Answer.    Without waiving its objections, CJI states as follows:

CJI repeats and incorporates its answer to Interrogatory No. 1.

INTERROGATORY NO. 4:

Identify the person(s) most knowledgeable concerning the facts and documents upon which CJI relies to support CJI's asserted equitable defense of laches.

RESPONSE TO INTERROGATORY NO. 4:

Objection.    CJI objects to the interrogatory on the grounds that it is overly broad and unduly burdensome. CJI objects to the interrogatory to the extent CSI seeks the identity of persons who are no longer alive. CJI objects to the interrogatory to the extent CSI seeks the identity of persons whom the parties already have deposed about facts concerning CJI's laches defense.

Answer.    Without waiving its objection, CJI believes that Bea Schlessinger Ross of CJI has knowledge concerning evidence upon which CJI may rely in connection with its laches defense.

CONGREGATION JESHUAT ISRAEL,

_____
Bea Schlessinger Ross, Co-President

STATE OF RHODE ISLAND
COUNTY OF Providence

On this 30th day of October, 2014 before me, the undersigned notary public personally appeared Bea Schlessinger Ross, as Co-President of Congregation Jeshuat Israel, a non-profit organization, personally known to the notary or proved to the notary through satisfactory evidence of identification, which was Known to be the person whose name is signed on the preceding or attached document, and acknowledged to the notary that he/she signed it voluntarily for its stated purpose.

_____
Notary Public
Print Name: Steven E. Snow
My Commission Expires: 6/30/17
Notary Identification Number: _____

- 9 -

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

*[signature]*

Steven E. Snow (#1774)
40 Westminster Street, Suite 1100
Providence, RI 02903
(401) 861-8200 / (401) 861-8210 FAX
ses@psh.com

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Gary P. Naftalis (admitted *pro hac vice*)
Jonathan M. Wagner (admitted *pro hac vice*)
Tobias B. Jacoby (admitted *pro hac vice*)
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9253 / (212) 715-9238 FAX
gnaftalis@kramerlevin.com
jwagner@kramerlevin.com
tjacoby@kramerlevin.com

DATED: October 31, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of October, 2013, I caused a true copy of the within document to be served by electronic mail and U.S. mail upon the following counsel of record:

> Deming E. Sherman, Esq.
> Krystle Guillory Tadesse, Esq.
> Edwards Wildman Palmer LLP
> 2800 Financial Plaza
> Providence, RI 02903
>
> Louis M. Solomon, Esq.
> Solomon B. Shinerock, Esq.
> One World Financial Center
> Cadwalader, Wickersham & Taft LLP
> New York, NY 10281

Dated: October 31, 2014
New York, New York

_____
Tobias B. Jacoby