# EXHIBIT 8

Case 1:12-cv-00822-LM-AKJ   Document 55-10   Filed 02/02/15   Page 1 of 5 PageID #: 1420

CIRCUIT COURT OF THE UNITED STATES.

District of Rhode Island.

FISHEL DAVID et al. )
)
VS.           ) In Equity, No. 2613.
)
L. NAPOLEON LEVY et al.)

OPINION on DEFENDANTS' DEMURRER & PLEA.

*January 10.1903*

Brown J.  The bill alleges in substance that in 1759 a tract of land in Newport was purchased by a number of persons of the Jewish faith, and that a deed of said land was executed by its owner, Ebenezer Allen, to Jacob Rodrigues Rivera, Moses Levy, and Isaac Harte, all of Newport. This deed, which is annexed to the bill, is upon its face a deed to the grantees named for a full money consideration, and affords no evidence in itself of the allegation of the bill that the said grantees "became joint tenants of said parcels of land as trustees of the Jews of Newport forever"; nor would such a trust arise from the fact that certain persons of the Jewish faith had contributed the purchase money from a desire "of establishing and owning a permanent place whereon they could erect a synagogue and conduct their worship according to the Jewish rites." Aside from the question whether such a trust as is alleged in the bill, i.e., a trust "for the Jews of Newport", would be a valid trust, and if valid enforceable

-1-


Reproduced at the National Archives at Boston

CSI0316

by these complainants, it is apparent that no trust of this general character would arise from a purchase of the land for the purposes set forth in paragraph 1 of the bill.

On the complainants' own theory of a trust for the Jews of Newport, the bill is fatally defective for its omission to set forth that any one of the complainants is a Jew; and it is difficult to imagine how the "Congregation Jeshuat Israel, a corporation created by law", can be regarded as having any right or interest in such a trust, since a domestic corporation of this State cannot be regarded as a Jew of Newport.

Assuming, however, that there is an omission by mere oversight, and that the fourteen individual complainants are Jews, the bill is still fatally defective for its failure to allege any facts which would give them any legal or equitable interest in the land or building in question.

If lands were purchased in 1759, and a synagogue erected thereon in 1763 by Jews then residing in Newport, and even if the synagogue has ever since been used as a place of public worship, this would not support the present bill.

Paragraph 11 of the bill contains the averment that the defendants "have interrupted the possession, the control and management of said premises by the Jews of Newport, with which as a matter of law and equity they were invested". This is a

-2-

Reproduced at the National Archives at Boston

mere allegation of a legal conclusion for which there is no warrant in the facts stated in the bill, and with which such facts as are stated are inconsistent.

The purpose of certain paragraphs of the bill is not apparent. The extract from the will of Jacob Rodriques Rivera, deceased February 18, 1789, contains a recital which may be interpreted as declaring that the conveyance to Rivera, Moses Levy, and Isaac Harte was "in trust only to and for the sole use, benefit and behoof of the Jewish Society, in Newport". He, moreover, released all right, "Always saving and excepting such right as I have by being a Single Member of that Society." So far as this tends to show a trust, it is a trust for a Jewish Society, and not the trust set forth by the complainants, to wit, a trust for the Jews of Newport. There is no allegation that these complainants have any standing as members of a Jewish Society, or as persons entitled to admission thereto, or even that they have the right to demand of such Society or its trustees the right to attend worship.

But, in addition to the entire failure of the complainants to set forth any legal or equitable interest as the basis of this bill, it appears by the bill that the defendants were in actual possession under deeds purporting to convey them a legal title, upon a trust declared therein, and that the complainants entered

Reproduced at the National Archives at Boston

- 3 -

the premises for the purpose of holding religious services, and are now, and have been since April 22, 1902, in the full, free, and uninterrupted possession, and have been sued in the State court in an action of forcible entry and detainer, and that the complainants seek to enjoin the prosecution of actions at law.

The bill discloses no reason for enjoining the defendants from establishing their title at law, or which justifies the complainants in their present alleged possession and control of the premises. The plea of the defendants to paragraphs 14 and 15 sets forth, however, that the complainants' entry and possession were by forcible entry and detainer, which is a bar to the right of the complainants to seek the aid of a court of equity, even though the verdict set forth in the plea is of no legal force. The complainants cannot take the law into their own hands, acquire possession by force, and then invoke the aid of a court of equity to maintain them in a possession which, so far as appears from the bill, is without legal or equitable justification, and which appears by the plea to have been obtained by forcible entry and detainer.

> Demurrer sustained, Plea sustained, and the
> Bill will be dismissed.

Reproduced at the National Archives at Boston

-4-