# EXHIBIT 37

## Congregation Jeshuat Israel
## Special Congregation Meeting
## June 25, 2012

The special meeting of Congregation Jeshuat Israel was called to order by co-president Bea Ross at 7:05 p.m. with the following individuals in attendance:

Marcia Cohen, Elie Cohen, Rosalie Goldman, Dona Pimental, Renee Talewsky, Hope Rubin, Gerald Rubin, Phyllis-Ann Friedman, James Herstoff, Joan Liebman, Barbara Epstein, Zal Newman, Bernard Gewirz, Andrew Segal, Rita Slom, Laura Pedrick, Saul Woythaler, Debra Herstoff, Selma Klein, Gail Slitechnik, Herbert Meister, David Bazarsky, Susan Woythaler, Inez Fenster, Emily Fowler, Brian Gillson, Michael Pimental, Sally Abbey, Lou Abbey, Paul Tobak, Richard Casten, Bea Ross, Cliff Guller, Marc Ladin, Oscar Gleiberman, [Mrs.] Gleiberman, Bernice Schwebber, Saul Schwebber.

A quorum of the congregation was present.

Mrs. Ross called for a moment of silence for congregation member Dr. Elliot Kaminitz who died last week.

Renee Talewsky presented the membership application of David and Carolyn Brodsky, who, despite qualifying for an associate membership, wish to become full members. Mrs. Talewsky indicated that Rabbi Ekovitz approved of their application. A motion was made and seconded to confirm the membership of David and Carolyn Brodsky and the motion was unanimously approved.

Bea Ross then distributed copies of a resolution to authorize the sale of one set of Myer Myers Rimonim to the Museum of Fine Arts (MFA) in Boston for $7,400,000. The full text of the resolution will be archived along with these minutes.

Mrs. Ross then introduced Andrew Segal to present a report on behalf of a committee that was established in 2008 by a congregation resolution to investigate the sale of real or personal property of the congregation.

Mr. Siegel began by briefly summarizing the committee's activities over the last four years, starting with an investigation into whether the sale of property could help the congregation overcome its current financial crisis and culminating in the offer to purchase one set of the Congregation's Myer Myers Rimonim by the MFA for $7,400,000. The offer is for a private sale facilitated by Christie's. Mr. Segal presented the rationale of why a private sale was pursued versus a sale at auction. One of the reasons cited was that a private sale would allow the congregation to ensure that the Rimonim did not disappear into a private collection and would remain available for people to study and view. The full text of Mr. Segal's presentation will be archived along with these minutes.

CONFIDENTIAL CJI001244

Congregation Jeshuat Israel
Special Congregation Meeting
June 25, 2012

Mr. Segal went on to say that, with respect to the purchase price, the museum has privately raised $5,000,000 and is awaiting a decision from the congregation on whether to proceed with the sale before attempting to raise the remainder publicly. Mr. Segal concluded by saying that part of the arrangement could be to produce a replica that the congregation would retain and use.

Mrs. Ross then introduced David Bazarsky to speak about how the proceeds of the sale would be managed.

Mr. Bazarsky said that the proceeds will be placed into an irrevocable trust or endowment fund, where the principal could NEVER be invaded, and the income used to offset the operating costs of the congregation. He added that perhaps 15% of the income could be set aside specifically for the maintenance of the synagogue, the Rabbi's house, the Levi Gale house, the Colonial Cemetery and Patriots' Park. The remainder would then be used for offsetting the Rabbi's salary, utilities, and the various other operating needs of the congregation. None of the income generated by the proceeds of the sale would be used for the Loeb Visitor Center. Such an endowment, said Mr. Bazarsky, would guarantee that the synagogue would always have a full time Rabbi in residence and be open for services. He estimated that the income from the endowment would be about $300,000 per year. Mr. Bazarsky concluded by saying that the congregation would not only have the opportunity to approve the actual sale, but would also have the final approval on how the proceeds will be endowed, protected and used.

Michael Pimental, as treasurer, mentioned that the current operating budget is about $240,000 per year. He added that, although the current budget covers the Rabbi's salary and much of the operating expenses, it works primarily because all of the administrative tasks are performed by a team of volunteers, and that a lot of money is saved by closing the Levy Gale House in the winter.

At that point, Bea Ross opened the floor to questions.

Zal Newman asked how many sets of Myer Myers Rimonim are owned by the congregation. Mrs. Ross answered that the congregation owns two sets. The proposal calls for only one set to be sold. Mr. Segal explained that the set to be retained by the congregation is actually appraised at a higher value.

Oscar Gleiberman asked for an explanation of differences between the two sets. Mrs. Ross answered that the set to be purchased by the MFA came to the congregation in 1765. The set to be retained came to the congregation in the 1790's as a gift.

CONFIDENTIAL

CJI001245

## Congregation Jeshuat Israel
## Special Congregation Meeting
## June 25, 2012

Joan Leibman asked if the Rimonim are owned by Congregation Shearith Israel (CSI) since they technically own the Synagogue building. Mrs. Ross explained that any items given to CSI for safekeeping when the Synagogue closed in the 1800's were returned to us when the synagogue reopened. She added that Christie's research indicates we have good title to the items.

Phyllis-Ann Friedman asked if the Rimonim were ever restored. Mrs. Ross replied that both sets were restored.

James Herstoff said that he is not in favor of selling the Rimonim because once sold they are gone forever. He went on to raise several concerns:

1. That the articles of incorporation of the congregation, as sanctioned by the State of Rhode Island, specify that no real or personal property worth more than $20,000 can be sold. So, a sale of the Rimonim could constitute a violation of state law.
2. If congregation ceases to exist, what happens to endowment fund? Doesn't CSI take ownership?
3. If the Rimonim were in the building before CSI took ownership, then CSI owns them and Congregation Jeshuat Israel has no authority to sell them.

David Bazarsky responded by saying:

1. In actuality, the articles of incorporation prohibit the congregation from even owning, much less selling, any real or personal property worth more than $20,000, which is a near impossibility for any religious institution in current times. If such a limitation was enforced, no congregation could, for example, own a building worth more than $20,000 or accept a donation worth more than $20,000. Mr. Bazarsky did concede that a bill might actually have to be submitted to the state general assembly to amend the value.
2. The fate of the endowment in case the congregation ever ceased to exist will be one of the terms that the congregation will approve in determining how the proceeds are managed.
3. With respect to the ownership issue, Mr. Bazarsky asserted that CSI got title to the building and the fixtures and not ownership of personal property. Furthermore, any property held by CSI for safekeeping was given back to the congregation.

Mark Ladin asked why the entire proceeds must be endowed. Is there an opportunity to use some money for repairs we might need now? David Bazarsky responded by saying that it was more important to irrevocably protect the principal and prevent future boards of officers from invading the principal for uses that may be imprudent.

CONFIDENTIAL                                                                                                      CJI001246

Congregation Jeshuat Israel
Special Congregation Meeting
June 25, 2012

Dr. Gleiberman spoke again by saying that he has mixed feelings about selling the Rimonim. He added that he is troubled by the question of whether CSI or CJI own then. He read from the rental agreement of 1908 between the congregations which states, in part, that CSI has ownership of the building, grounds, appurtenances and paraphernalia thereto. Dr. Gleiberman went on to say that he took it upon himself to contact CSI directly and spoke with Michael Katz. Bea Ross reported that she has spoken with Mr. Katz and the intention is to keep CSI informed and work with them to secure the financial future of the congregation. Mr. Bazarsky added that the lease agreement in question technically terminated on December 31, 1913, and went on to say that CSI should have a vested interest in seeing that the building will be maintained in perpetuity.

Saul Schwebber mentioned that, although CSI may technically own the building, they have historically provided no financial assistance to this congregation, and it is up to us to secure our own financial future.

Joan Leibman asked what the museum might do with the items. Would they be able to ever sell them? Bea Ross responded that the congregation would have right of first refusal if museum ever needed to sell the items.

Rita asked if the co-presidents or committee is willing to talk to the press. Laura Pedrick recommended that people refer any inquiries from the press to Bea Ross.

Laura Pedrick then made a motion to accept the resolution to authorize the sale of the Rimonim. Sue Woythaler seconded the motion. The motion was approved with 31 votes in favor, 6 votes against and one abstention.

### Good and Welfare

Marcia Cohen reminded everyone to please RSVP to their invitations to the reception for Rabbi Eskovitz and include the names of all attendees on the RSVP.

A motion was made and seconded to adjourn. The motion passed unanimously and the meeting was adjourned at approximately 8:05PM.

Respectfully submitted by Cliff Guller

CONFIDENTIAL

CJI001247