# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CONGREGATION JESHUAT ISRAEL,<br><br>Plaintiff,<br><br>v.<br><br>CONGREGATION SHEARITH ISRAEL,<br><br>Defendant. | C.A. NO. 12-822-M (LDA) |

### PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE THE TESTIMONY OF RABBI DR. MEIR Y. SOLOVEICHIK AND EVIDENCE OF JEWISH LAW, RITUAL, CUSTOM OR PRACTICE

Plaintiff Congregation Jeshuat Israel ("CJI" or "Jeshuat Israel") respectfully moves the Court to Preclude the Testimony of Rabbi Dr. Meir Y. Soloveichik and evidence of Jewish Law, Ritual, Custom or Practice.  A memorandum in support of this motion, which sets for the grounds to preclude the testimony, is hereby filed in accompaniment of this motion.

> CONGREGATION JESHUAT ISRAEL,
>
> By Its Attorneys,
>
> PARTRIDGE SNOW & HAHN LLP
>
> */s/ Steven E. Snow*
> Steven E. Snow (#1774)
> 40 Westminster Street, Suite 1100
> Providence, RI  02903
> (401) 861-8200 / (401) 861-8210 FAX
> ses@psh.com
>
> KRAMER LEVIN NAFTALIS & FRANKEL LLP
> Gary P. Naftalis (admitted *pro hac vice*)
> Tobias B. Jacoby (admitted *pro hac vice*)
> Daniel P. Schumeister (admitted *pro hac vice*)
> 1177 Avenue of the Americas
> New York, NY  10036

                                            (212) 715-9253 / (212) 715-9238 FAX  
                                            gnaftalis@kramerlevin.com  
                                            tjacoby@kramerlevin.com  
                                            dschumeister@kramerlevin.com

DATED: May 11, 2015

## **CERTIFICATE OF SERVICE**

       I hereby certify that on the 11th day of May, 2015, I caused a true copy of the within document to be delivered through the ECF system to all counsel of record.

                                      /s/ Steven E. Snow

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CONGREGATION JESHUAT ISRAEL, | |
| Plaintiff, | |
| v. | C.A. NO. 12-822-M (LDA) |
| CONGREGATION SHEARITH ISRAEL, | |
| Defendant. | |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE THE TESTIMONY OF RABBI DR. MEIR Y. SOLOVEICHIK AND EVIDENCE OF JEWISH LAW, RITUAL, CUSTOM OR PRACTICE

Plaintiff Congregation Jeshuat Israel ("CJI" or "Jeshuat Israel") respectfully submits this memorandum in support of its Motion to Preclude the Testimony of Rabbi Dr. Meir Y. Soloveichik and evidence of Jewish Law, Ritual, Custom or Practice.

**Preliminary Statement**

On March 23, 2015, more than seven months after the close of fact discovery and several months after affirmative expert disclosures were due, defendant CSI served Amended Initial Disclosures. In that submission, CSI for the first time identified Rabbi Dr. Meir Y. Soloveichik as a knowledgeable witness. CSI there states that Rabbi Soloveichik, who became CSI's Rabbi seven months after this litigation began, "has information on" two topics: (i) "the course of dealing between" CSI and CJI, and (ii) "the history of the ritual, rites, and customs of the Orthodox Spanish and Portuguese Jews as practiced and observed by CJI during a relevant period" – "all as more fully set forth in the FRCP 44.1 disclosure made in this action." CSI had served that "FRCP 44.1 disclosure" – detailing numerous claims as to the proper interpretation of

Jewish law and the application of Jewish law to this case – nearly four months after the fact discovery cutoff, on November 26, 2014.  Now, several months later, CSI through its Amended Initial Disclosure and identification of Rabbi Soloveichik as a potential witness has finally disclosed how it apparently intends to prove the matters referenced in its FRCP 44.1 disclosure.

Rabbi Soloveichik should be precluded from testifying on either of the topics cited by CSI.  Additionally, the Court should preclude all evidence pertaining to CSI's November 2014 "FRCP 44.1 disclosure."

*First*, Rabbi Soloveichik has no personal knowledge concerning the "course of dealings between the parties."  He was not CSI's rabbi and had no other personal involvement during the events at issue in this case and therefore cannot testify as a fact witness.

*Second*, permitting Rabbi Soloveichik's testimony as well as any other evidence concerning the matters set out in CSI's "FRCP 44.1 disclosure" runs afoul of the Establishment Clause of the First Amendment, which bars litigants from inserting disputes over religious doctrine into a secular case.  As a matter of fundamental Constitutional law, such matters are off limits for our Courts.  Moreover CSI seems to be under the mistaken impression that this case is to be decided under Jewish law.  That is incorrect.  Rather, this case turns on Rhode Island statutory and common law – and nothing else.

*Third,* even if CSI could overcome this Constitutional hurdle, Rabbi Soloveichik's testimony should still be excluded.  Rabbi Soloveichik has been disclosed too late to serve as a witness on "the history" of the Jewish rituals and rites performed by CJI or on Jewish law or rites more generally.  As CSI has previously recognized, if admissible at all this subject is the domain of expert testimony.  During discovery CSI instructed its rabbinic fact witness not to answer questions on the subject precisely because such testimony is for experts only.  CSI's expert

disclosures and reports were due no later than November 2014 and expert discovery has long since concluded, yet CSI never provided any expert disclosure or report from Rabbi Soloveichik. CSI's late disclosure, coupled with the failure to provide an expert report, severely prejudices CJI. Had CJI known that CSI would be offering what is effectively expert testimony on Jewish law, ritual and customs, CJI would have retained its own rebuttal expert with respect to these points, just as CJI did with respect to CSI's timely-disclosed experts. Now, on the eve of trial it is too late for CJI to do so.

## I.  BACKGROUND

CSI served its Initial Disclosures on August 26, 2013. Pursuant to the Court's Standard Pretrial Order (Dkt. No. 17), fact discovery closed on August 1, 2014.

On November 26, 2014, CSI submitted to CJI a document captioned Disclosure of Potential Use of Jewish Religious Law, Ritual, Custom or Practice. (Exh. A.). CSI cited Fed. R. Civ. P. 44.1 as support for the submission (*id.* at 1) and later described this submission as its "FRCP 44.1 disclosure." (Exh. B; Amended Initial Disclosure ¶ 21). In the "FRCP 44.1 disclosure," CSI purported to "reserve[] the right to rely on Jewish law, ritual, custom, or practice (LRCP) in connection with the resolution of CJI's claims in this action." (at 1).

CSI "summarize[d] the substance" of its proof on Jewish LRCP in eight categories. CSI

- stated that "the Court should consider directing the parties" to have their dispute adjudicated by a court of Jewish law, because "Jewish LRCP [laws, rituals, custom or practice] includes detailed and strict rules about how disputes are to be resolved" (at 1-2);

- claimed that the outcome of litigation that took place "in the early 1900s" "would have been sufficient in itself as a matter of Jewish LRCP" to prove CSI's ownership of the Rimonim (at 2);

- asserted that "as a matter of Jewish LRCP and otherwise, CSI would never have permitted the sale of the Rimonim" or would have mandated that the issue be resolved by a court of Jewish law (at 3);

- claimed that "no Orthodox Rabbi would approve" of the sale of the Rimonim (at 3);

- 3 -

- maintained that the "Jewish ritual concept of Tashmishei Kedusha" means that "it would have violated Jewish LRCP were CJI to have sold the Rimonim" (at 3-4) (emphasis removed);

- contended that "as a matter of Jewish LRCP, a person or institution cannot sell what he or it does not own" (at 4);

- pleaded that selling the Rimonim for purposes of financial security "would have contravened Jewish LRCP" (at 4-5);

- declared that CJI "has taken a number of incorrect positions" with respect to its understanding of the Jewish scholar Maimonides or "Rambam," who lived in the 11th and 12th centuries. (at 5-6).

CSI also served its expert reports on November 26, 2014. None of its experts addressed the issues set out in CSI's Rule 44.1 disclosure. Pursuant to the Court's December 15, 2014 scheduling order (Dkt. No. 43), depositions of CSI's experts concluded on December 31, 2014. As provided in the scheduling order, CJI disclosed a rebuttal expert on February 23, 2015. CSI deposed CJI's rebuttal expert on March 6, 2015. CSI then submitted rebuttal expert reports from its affirmative experts on March 25, 2015. Rabbi Soloveichik did not submit an expert report, nor did CSI identify him as an expert at any time.

On March 23, 2015, CSI served an Amended Initial Disclosure Pursuant to Fed. R. Civ. P. 26(a). (Exh. B). The Amended Initial Disclosure states:

> Rabbi [Dr. Meir Y.] Soloveichik has information on the course of dealing between the parties as well as on the history of the ritual, rites, and customs of the Orthodox Spanish and Portuguese Jews as practiced and observed by CJI during a relevant period, all as more fully set forth in the FRCP 44.1 disclosure made in this action.

(CSI Amended Initial Disclosure ¶ 21). CSI also amended its interrogatories responses, originally served a year and a half earlier in September 2013, to make a similar disclosure.

CSI's March 23 Amended Initial Disclosure is the first time that CSI has identified Rabbi Soloveichik as an individual with discoverable information. The disclosure is also the first time that CSI has either notified CJI of its intent to provide evidence "on the history of the ritual, rites,

- 4 -

and customs of the Orthodox Spanish and Portuguese Jews as practiced and observed by" CJI, or explained the means by which it seeks to prove the matters described in its "FRCP 44.1 disclosure."

## II. ARGUMENT

Rabbi Soloveichik should be precluded from testifying at trial concerning the "course of dealing between" the parties and, furthermore, CSI should be barred from presenting any evidence on the matters set forth in its "FRCP 44.1 disclosure," whether from Rabbi Soloveichik or otherwise.

- Though CSI's Amended Disclosure suggests that Rabbi Soloveichik could testify concerning the "course of dealing between the parties," Rabbi Soloveichik was not even named CSI's rabbi until June 2013, well after this litigation had begun. He therefore has no personal knowledge concerning the parties' dealings at issue in this case or the factual issues in dispute here and cannot be a fact witness.

- CSI should be precluded from presenting any evidence – whether from Rabbi Soloveichik or otherwise – pertaining to the matters set out in CSI's November 2014 "FRCP 44.1 disclosure." That submission makes clear that CSI will ask the Court to determine disputed issues of religious law and religious doctrine. But the Establishment Clause and long-settled Supreme Court precedent require that the Court steer clear of such disputes. Moreover, this case is to be adjudicated under secular law – Rhode Island statutory and common law of trusts, property, fiduciary duty and contracts.

- Even if CSI could overcome this Constitutional hurdle, Rabbi Soloveichik should still be barred from testifying on the "history" of CJI's customs and ritual or on any matters set out in the "FRCP 44.1 disclosure." Recognizing that these subjects are for experts, not fact witnesses,

- 5 -

CSI previously barred CJI from questioning a CSI rabbinic fact witness on these subjects on the ground that they were the domain of experts only.  But CSI's expert disclosure and reports were due no later than November 2014, expert discovery has long since concluded, and CSI has never provided any disclosure or report from Rabbi Soloveichik.  Nor can there be any excuse for this failure to comply with the Rules, as Rabbi Soloveichik is the current Rabbi of CSI and his views have thus long been known to CSI.  Allowing this tardy testimony now would severely prejudice CJI, for at this late date CJI no longer can retain an expert to rebut the proposed testimony, and would divert CJI's attention to collateral issues at a critical juncture, on the eve of trial.

### A. Rabbi Soloveichik Should Be Precluded from Testifying as to the Parties' "Course of Dealings Between the Parties"

Rabbi Soloveichik has no personal knowledge of the "course of dealings" between CSI and CJI during the relevant time period and thus cannot offer any fact testimony on this subject.

It is a basic tenet of evidence law that fact witnesses may testify only to facts and perceptions within their personal knowledge.  Because Rabbi Soloveichik, who was hired as rabbi of CSI well after this litigation commenced, does not have any personal knowledge of the course of dealing between CJI and CSI during the period at issue in this case, he should be precluded from serving as a fact witness on that topic.

Under Fed. R. Evid. 602, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." In other words, a "fact witness is limited to testimony about concrete facts based on the witness's personal knowledge through his own observations and perception." *Insight Tech. Inc. v. SureFire, LLC.*, 2009 WL 3242555, at *1 (D.N.H. Oct. 8, 2009).

According to CSI, the first topic about which Rabbi Soloveichik supposedly has information is "the course of dealing between the parties."  CSI Amended Initial Disclosure ¶ 21.

- 6 -

Yet Rabbi Soloveichik has no personal knowledge or perceptions on this subject. CSI hired Rabbi Soloveichik in June 2013. See Exh. C (CSI June 10, 2013 announcement of Rabbi Soloveichik's hiring). This litigation commenced seven months earlier, in November 2012. *See generally* Compl. (filed Nov. 8, 2012). Rabbi Soloveichik thus has no personal knowledge of "the course of dealings between the parties" relevant to this litigation. And even had Rabbi Soloveichik read widely about the CJI-CSI relationship, that would not create personal knowledge. *See Kemp v. Balboa*, 23 F.3d 211, 213 (8th Cir. 1994) (reversing for new trial where prison nurse testified "based not upon her personal knowledge of the facts about which she testified, but solely upon what she had read in the medical records prepared by others" who worked with her in the prison infirmary).

> B. **CSI Should Be Precluded from Offering Any Evidence – Including Rabbi Soloveichik's Testimony – On Jewish Religious Law and Ritual**

First Amendment jurisprudence makes clear that secular courts are forbidden to interpret religious doctrine. A court that does so violates basic principles of the Establishment Clause and commits reversible error. And yet that is exactly what CSI asks this Court to do, as laid out in CSI's "FRCP 44.1 disclosure." CSI requests that the Court (i) determine that Jewish law prohibits CJI's sale of the Rimonim, (ii) make findings regarding Judaic doctrine's "detailed and strict rules about how disputes are to be resolved," and (iii) even adjudicate the proper interpretation of the work of Maimonides, a Jewish scholar from the Middle Ages. CSI will apparently attempt to persuade the Court on these issues through the testimony of Rabbi Soloveichik. That testimony, as well as any other evidence CSI offers on these issues, entangles the Court in religious doctrine and thus runs afoul of the First Amendment.

Rule 44.1, seemingly relied upon by CSI to validate its submission of evidence on Jewish law, does not help CSI. That rule, explicitly meant to cover only the law of a "foreign country," has no bearing here.

> 1. The Establishment Clause Prohibits the Court from Accepting Any Evidence Concerning the Claims Set out in CSI's 44.1 Statement

As the United States Supreme Court has declared, the First Amendment "commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine." *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449 (1969) (holding that state court erred in determining property dispute on the basis of whether local church had departed from the doctrine of the general church). Accordingly, "the First Amendment forbids civil courts" from engaging in the "interpretation of particular church doctrines and the importance of those doctrines to the religion." *Id.* at 450. When faced with a dispute between religious entities, courts must resolve the dispute only by reference to "neutral principles of law." *Jones v. Wolf*, 443 U.S. 595, 602-03 (1979). That is, though the First Amendment does not bar adjudication of controversies involving religious entities, in doing so courts must nonetheless refrain from interpreting religious doctrine or law and instead must rely on statutes and common law. *See Smith v. O'Connell*, 986 F. Supp. 73, 76-77 (D.R.I. 1997) (Torres, J.) (holding that court retained jurisdiction but could not interpret religious doctrine).

Testimony calling for the interpretation of religious doctrine may not be heard in court. "[D]istrict courts must exercise care to ensure that the evidence presented at trial is of a secular nature . . . . It is incumbent upon the court to limit the evidence at trial in order to avoid determining religious controversies." *Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468,

471-72 (8th Cir. 1993) (reversing dismissal of complaint because case would not "definitely involve the district court in an impermissible inquiry into Synod's bylaws or religious beliefs.").

Despite this clear line of First Amendment jurisprudence, CSI suggests that Rabbi Soloveichik may testify concerning the proper interpretation of Jewish religious law and doctrine. CSI states in its Amended Initial Disclosure that the information possessed by Rabbi Soloveichik "on the course of dealing between the parties" and "on the history of the ritual, rites and customs of the Orthodox Spanish and Portuguese Jews as practiced and observed by CJI during a relevant period" is "more fully set forth in the FRCP 44.1 disclosure made in this action." (Amended Initial Disclosure at ¶ 21). In that "FRCP 44.1 disclosure," CSI's November 26, 2014 Disclosure of Potential Use of Jewish Religious Law, Ritual, Custom or Practice, CSI repeatedly asks that the Court make findings regarding Jewish religious law and religious doctrine rather than the common and statutory law of Rhode Island with respect to contracts, property, trusts and fiduciary duty – the only law upon which this case must be decided:

- CSI posits that the "Court should consider directing the parties" to have their dispute adjudicated by a court of Jewish law, because "Jewish LRCP includes detailed and strict rules about how disputes are to be resolved" (at 1-2);

- CSI asserts that the outcome of litigation that took place "in the early 1900s" "would have been sufficient in itself as a matter of Jewish LRCP" to prove CSI's ownership of the Rimonim (at 2);

- CSI submits that as "a matter of Jewish LRCP and otherwise, CSI would never have permitted the sale of the Rimonim" or would have mandated the issue be resolved by a court of Jewish law (at 3);

- CSI contends that "no Orthodox Rabbi would approve of" the sale of the Rimonim (at 3);

- CSI claims that the "Jewish ritual concept of Tashmishei Kedusha" means that "it would have violated Jewish LRCP were CJI to have sold the Rimonim" (at 3-4) (emphasis removed);

- 9 -

- CSI asserts that "as a matter of Jewish LRCP, a person or institution cannot sell what he or it does not own" (at 4);

- CSI pleads selling the Rimonim to provide financial security "would have contravened Jewish LRCP" (at 4-5);

- CSI claims that CJI "has taken a number of incorrect positions" with respect to its understanding of the scholar Rambam, aka Maimonides, who lived in the 11th and 12th centuries. (at 5-6).

CJI certainly does not admit to any of CSI's points. More critically, for the Court to make findings with respect to any of these matters would require an analysis and determination of Jewish law and doctrine. But the caselaw makes clear that as a Constitutional matter the Court is barred from doing so. "To reach those questions would require the [Court] to engage in the forbidden process of interpreting and weighing church doctrine." *Presbyterian Church*, 393 U.S. at 451.

*Klagsbrun v. Va'ad HaraBonim of Greater Monsey*, 53 F. Supp. 2d 732 (D.N.J. 1999), is instructive. There, an Orthodox Jewish husband and wife sued an association of Orthodox rabbis for defamation. The couple claimed that statements made in a notice disseminated by the rabbinical association – including that the husband "had never given a Jewish divorce" to his first wife and that the couple failed to comply with the order of a beit din (rabbinical court) – were false and defamatory. *Id.* at 735-36. The court dismissed for lack of jurisdiction, reasoning that to determine the truth or falsity of any of the association's statements the Court would have to "undertake an examination of underlying religious doctrine or practice." *Id.* at 739-41. For instance, the court would have been called upon to determine whether the husband had divorced his wife "within the meaning of the Orthodox Jewish faith," and such inquiry "is unquestionably forbidden ground." *Id.* at 741 (emphasis removed). Additionally, the court found that it could not assess the couple's failure to submit to the jurisdiction of a rabbinical courts because to do so would have impermissibly entangled it in questions of religious doctrine and thus those issues

"are beyond the ken of civil courts." *Id.* at 742. As the court noted, "the Establishment Clause is implicated whenever courts must interpret, evaluate or apply underlying religious doctrine to resolve disputes involving religious organizations." *Id. See also Wolf v. Rose Hill Cemetery Ass'n*, 832 P.2d 1007, 1009 (Colo. Ct. App. 1991) (reversing trial court because in deciding whether plaintiff's father was an Orthodox Jew based on expert testimony of Orthodox and Reform rabbis, court had predicated its determination on "conflicting theological conclusions of various religious scholars," an analysis that was "inconsistent with the Establishment Clause of the First Amendment"; on remand, trial court was directed to make determinations "independent of religious doctrine").

*Klagsbrun* and *Wolf* teach that this Court may not hear Rabbi Soloveichik's testimony or other material referenced in CSI's 44.1 disclosure. The disclosure shows that CSI is seeking to ask this Court to rule as to questions of religious law and doctrine, including CSI's most recent attempt to change the forum by arguing that this dispute should have been resolved in a rabbinical court. But as *Klagsbrun* explicitly shows, a secular court's consideration of any such claims are forbidden. CSI also seemingly plans to put forward evidence, including Rabbi Soloveichik's testimony, to prove what actions – such as the sale of the Rimonim – are acceptable or not under the laws of the Jewish faith. Yet this too is clearly beyond the ken of the Court: just as the *Klagsbrun* court recognized that it could not decide whether or not a divorce had taken place "within the meaning of an Orthodox Jewish faith," so too may this Court not decide what actions, such as the sale of Rimonim, the Jewish faith does or does not allow. *See also Drevlow*, 991 F.2d at 472 ("district courts must exercise care to ensure that the evidence presented at trial is of a secular nature").

      2.      Rule 44.1 Provides No Support to CSI

Contrary to CSI's suggestion, and even putting aside the weighty constitutional issues, Rule 44.1 does not provide a basis for CSI's request that the Court make findings concerning religious doctrine.

CSI appears to believe that Fed. R. Civ. P. 44.1 supports its introduction of the matters described above. In the first sentence of its "Disclosure of Potential Use of Jewish Religious Law, Ritual, Custom or Practice," for instance, CSI supports its reservation of "the right to rely on Jewish LRCP" with a "Cf." cite to Fed. R. Civ. P. 44.1. (Exh. A at 1). And in its Amended Initial Disclosure, CSI describes the substance of Rabbi Soloveichik's possible testimony as "more fully set forth in the FRCP 44.1 disclosure made in this action." (Exh. B; Amended Initial Disclosure ¶ 21.)

The Rule offers no support to CSI. Rule 44.1 states that a "party who intends to raise an issue about a *foreign country's* law must give notice by a pleading or other writing." Fed. R. Civ. P. 44.1 (emphasis added). As the Advisory Committee noted, "Rule 44.1 is added by amendment to furnish Federal courts with a uniform and effective procedure for raising and determining an issue concerning the law of a *foreign country*." *Id.* Advisory Committee Note (emphasis added). Here, CSI does not seek to have the Court make a determination concerning the law of a *foreign country*. Rather, CSI seeks to have the Court make determinations of religious law. Rule 44.1 is irrelevant.[1]

---

[1] Rabbi Soloveichik's testimony as to CSI's FRCP 44.1 disclosure is also barred because, as the Court has recognized, expert witnesses may not offer legal conclusions. On March 6, 2015, the Court granted in part and denied in part CJI's motions to exclude CSI's expert witnesses, Prof. Linford Fisher and Dr. Vivian Mann. The Court held that it "will not allow either expert . . . to offer legal conclusions . . . ." CSI's FRCP 44.1 disclosure is, however, comprised almost entirely of legal conclusions: what actions are or are not acceptable "as a matter of Jewish LRCP" or "under Jewish LRCP," and the correct interpretation of a Jewish legal source, Maimonides. As the Court's March 6 Order recognized, legal determinations are within its sole

### C. Any Testimony as to the "History" of CJI's Ritual Practices or Related Matters Should Be Precluded as Disclosed Prejudicially and Unjustifiably Late

Rabbi Soloveichik's testimony should also be excluded under Rules 26 and 37 of the Federal Rules of Civil Procedure. CSI's untimely disclosure of Rabbi Soloveichik as a possible witness months after expert discovery closed, and only weeks before trial, is highly prejudicial to CJI. And CSI can offer no cognizable excuse or justification for waiting this long to identify Rabbi Soloveichik – CSI's full-time rabbi and employee – and failing to provide an expert report.

Expert witnesses must be disclosed either by the deadline set by the Court or, if no such deadline has been set, at least 90 days before trial. *See* Fed. R. Civ. P. 26(a)(2)(D). In assessing whether a party has complied with its expert disclosure requirements, courts assess Rule 26 and any relevant scheduling orders in tandem. *See, e.g.*, *Laplace-Bayard v. Batlle*, 295 F.3d 157, 161-62 (1st Cir. 2002) (affirming exclusion of untimely disclosed expert testimony). And when parties do not fulfill their disclosure obligations, Rule 37 commands that courts mete out strict punishment, stating that "the party *is not allowed* to use that information or witness . . . at a trial, unless the failure was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1) (emphasis added). As the Court of Appeals has observed, when a party fails to timely disclose its expert, "the required sanction in the ordinary case is mandatory preclusion." *Lohnes v. Level 3 Commc'ns, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001) (affirming exclusion of expert affidavit disclosed three months after close of discovery and fewer than three weeks before pre-trial conference). The burden is on CSI to show its late disclosure is harmless and substantially

---

province and are not acceptable topics for expert testimony. Therefore, even if the testimony were not prohibited by the Establishment Clause, Rabbi Soloveichik's testimony as to conclusions of Jewish law described in CSI's 44.1 disclosure would nonetheless be barred. *See Ji v. Bose Corp.*, 538 F. Supp. 2d 354, 360 (D. Mass. 2008) (excluding any legal conclusions regarding disputed contract).

justified. *See Wilson v. Bradlees, Inc.*, 250 F. 3d 10, 21 (1st Cir. 2001) ("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with the Rule was either justified or harmless and therefore deserving of some lesser sanction"; affirming exclusion of expert testimony). Substantial justification or harmlessness offers only a "narrow escape hatch" to the offending party. *Lohnes*, 272 F.3d at 60.

Testimony concerning "history" or "course of dealing" outside an individual's personal knowledge is expert testimony. *See Sovereign Military Hospitaller Order v. Fla. Priory of the Knights Hospitallers*, 702 F.3d 1279, 1295-96 (11th Cir. 2012) (holding that district court erred when it allowed lay witness, who "should have been qualified as an expert witness," to testify regarding histories of two related religious organizations). CSI's disclosure of Rabbi Soloveichik effectively as an expert witness concerning CJI's religious practices and rites comes far too late – and on the back of prior delays with CSI's expert disclosures. According to the Court's Standard Pretrial Order, CSI's expert disclosures were initially due on October 1, 2014. CJI consented to CSI's request for an extension until October 21, 2014. At a hearing on September 23, 2014, the Court directed the parties to work out a new schedule for expert disclosures. CSI did not provide a date for its expert reports, despite CJI's request that CSI do so. CSI finally served its expert reports on November 26, 2014. On December 15, 2014, the Court issued a new scheduling order, stating that depositions of CSI's experts were to be completed by January 5, 2015, and the last deposition of CSI's experts took place on December 31, 2014.

Given that even depositions of CSI's experts were supposed to have concluded on January 5, 2015, the disclosure of Rabbi Soloveichik on March 23, 2015 as a witness whose

- 14 -

testimony clearly is expert in nature, and failure to provide an expert report, contravenes the schedule set by the Court.

CSI can offer no substantial justification for its late disclosure. There is no reason why CSI could not have informed CJI months ago that it would call Rabbi Soloveichik to testify concerning the history of CJI's religious practices or the course of dealing between the parties, and provide an expert report. There is no issue with respect to finding the purported expert in question, for Rabbi Soloveichik is CSI's own rabbi and full time employee. Under these circumstances, CSI has no excuse for waiting until shortly before trial, months after relevant deadlines, to disclose its expert witness. *See Primus v. United States*, 389 F.3d 231, 235 (1st Cir. 2004) (noting that plaintiff had already "been granted multiple extensions" and rejecting arguments that "difficulties in securing an available expert," responding to surprising tactical choices by adversary, and discovering expert's availability post-deadline could excuse the late disclosure).

At this late date, CSI's dilatory disclosure is not harmless. Fact discovery closed nine months ago; CSI expert depositions concluded more than four months ago. Trial preparation has been at full speed for some time and the trial will begin on May 26. It would be disruptive and prejudicial for CJI to conduct the necessary expert discovery, deposition preparation, and deposition and possibly prepare a *Daubert* motion. Simply put, there would be significant prejudice to CJI if Rabbi Soloveichik were allowed to testify. *See Thibeault v. Square D Co.*, 960 F.2d 239, 247 (1st Cir. 1992) (affirming expert exclusion where defendant "would have had to scrap much of its earlier preparation in favor of a frantic, last-minute scramble to investigate the emergent witnesses, counter their testimony, and rebut a new and different case concept").

Beyond that, had CJI known that CSI would present Rabbi Soloveichik to testify on Jewish custom, ritual and practice (assuming such testimony is even admissible – *see* pages 8-12 above), CJI would have retained a rebuttal expert, just as it has done with respect to CSI's timely-disclosed experts. Now, with the trial date looming and expert discovery concluded, CJI no longer has that opportunity. *Thibeault*, 960 F.2d at 247.

It would also set a dangerous precedent to allow parties to (i) disregard scheduling orders concerning expert disclosures and (ii) do so under the guise of purported fact testimony.

Finally, CSI cannot credibly claim that the proposed testimony in question is fact and not expert testimony. During the deposition of a CSI religious official, Rabbi Emeritus Marc Angel, CJI's counsel began to pose questions concerning Jewish ritual and practices. CSI's counsel barred CJI's questions and instructed the witness not to answer, on the ground that the matters were for experts, not fact witnesses. CSI's counsel stated that Rabbi Angel "is a fact witness. So it seems to me that that question calls for an opinion, and I would object and instruct him not to answer." Counsel declared that the witness "is not being here to give opinions on religious matters or ritual matters," and "we're not presenting him as an expert." (Angel Tr. 11-12. *See also id.* at 47 ("He's not an expert. We're not presenting him as an expert.")). When CJI's counsel later stated, "I want to make it absolutely – make sure I understand. Rabbi Angel will not give testimony at trial as to whether CJI can or cannot sell the Rimonim," CSI's counsel responded: "Right. That would be the subject of expert testimony on Jewish customs, rituals, et cetera, which this witness will not give." (*Id.* at Tr. 48).

Based on CSI counsel's repeated representations and instructions to the witness not to answer, CJI did not press the questions concerning ritual and practice. CSI should be bound by its counsel's representations, and this late-disclosed expert testimony should be precluded.

- 16 -

\* \* \*

Even assuming that Rabbi Soloveichik possessed personal knowledge in any of these subjects or was otherwise deemed a fact witness, any such testimony as a purported fact witness should be precluded because CSI's disclosure was prejudicially and unjustifiably late.

Fed. R. Civ. P. 26(a) requires an "Initial Disclosure" of the name and contact information of "each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A)(i). A party must then "supplement or correct its disclosure . . . *in a timely manner* if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or correct information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). When, however, "a party fails to provide information or identify a witness as required by [Rule 26(e)], the party is not allowed to use that information or witness . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Thus, when Rule 26(e) supplementation is untimely, the "baseline rule is that the required sanction in the ordinary case is mandatory preclusion." *Harriman v. Hancock Cnty.*, 627 F.3d 22, 29 (1st Cir. 2010) (affirming Rule 37(c) exclusion of late-disclosed fact witness affidavits).

Here, CSI's disclosure comes far too late. CSI served its Initial Disclosures on August 26, 2013. Pursuant to the Court's Standard Pretrial Order (Dkt. No. 17), fact discovery closed on August 1, 2014. Eight months after fact discovery closed, CSI divulged for the first time that it may seek to call Rabbi Soloveichik at trial – even though his name never surfaced during discovery, except at most in passing. CSI has not offered any justification for its late disclosure, nor could CSI credibly offer one; Rabbi Soloveichik has been CSI's rabbi since June 2013, and

- 17 -

we are now on the eve of trial.  Under these circumstances, and even if Rabbi Soloveichik possessed the relevant knowledge of any facts, CSI has no excuse for waiting to disclose until shortly before trial and months after applicable deadlines.

### Conclusion

For these reasons, CJI respectfully requests that the Court preclude the testimony of Rabbi Dr. Meir Y. Soloveichik and all other evidence of Jewish law, ritual, custom or practice.

CONGREGATION JESHUAT ISRAEL,

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

*/s/ Steven E. Snow*
Steven E. Snow (#1774)
40 Westminster Street, Suite 1100
Providence, RI  02903
(401) 861-8200 / (401) 861-8210 FAX
ses@psh.com

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Gary P. Naftalis (admitted *pro hac vice*)
Tobias B. Jacoby (admitted *pro hac vice*)
Daniel P. Schumeister (admitted *pro hac vice*)
1177 Avenue of the Americas
New York, NY  10036
(212) 715-9253 / (212) 715-9238 FAX
gnaftalis@kramerlevin.com
tjacoby@kramerlevin.com
dschumeister@kramerlevin.com

DATED:  May 11, 2015

### CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of May, 2015, I caused a true copy of the within document to be delivered through the ECF system to all counsel of record.

/s/ Steven E. Snow

2489921_1/7804-2