# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CONGREGATION JESHUAT ISRAEL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 12-822M |
| | : | |
| CONGREGATION SHEARITH ISRAEL, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT CONGREGATION SHEARITH ISRAEL'S DISCLOSURE OF POTENTIAL USE OF JEWISH RELIGIOUS LAW, RITUAL, CUSTOM, OR PRACTICE**

Defendant Congregation Shearith Israel (CSI) hereby gives conditional notice to Plaintiff Congregation Jeshuat Israel (CJI) that CSI reserves the right to rely on Jewish law, ritual, custom, or practice (LRCP) in connection with the resolution of CJI's claims in this action. Cf. Fed. R. Civ. P. 44.1. CSI reserves the right to object to the need or use of Jewish LRCP and further reserves the right to call one or more witnesses, including expert witnesses, and adduce other evidence in connection with Jewish LRCP.

Without limiting the issues that CSI may wish to raise in responding to CJI's claims, CSI does summarize the substance of what it currently believes it reserves the right to adduce proof on as follows:

*First*, as a matter of Jewish LRCP, CJI acted improperly in refusing to agree to permit a Beit Din, or court of Jewish law, to resolve the supposed dispute between it and CSI. It is a reality of life, and has been for thousands of years, that Jewish communities or their representatives do not always see rights and entitlements in the same way. Disputes happen. It is for that reason that a very fundamental precept of Jewish LRCP includes detailed and strict rules about how disputes are to be resolved. These are not obscure or subtle or debatable. All or

1

certainly most Orthodox Jews know that such disputes are to be resolved quickly, quietly, and effectively through a Beit Din.  Every Orthodox Rabbi certainly knows this.

CJI would have been fully protected during a Beit Din process.  CJI could have chosen a Rabbi of its choosing as its party-appointed member of the Beit Din.  CSI would have chosen one, and then the two Rabbis would have chosen a third.  Jewish LRCP has detailed and extensive procedures painstakingly designed to protect the rightful interests of litigants.  The Beit Din process has been studied, fashioned, and effectively functioned within normative (Orthodox) Judaism for over 2,000 years (there is detailed discussion of the process in the Talmudic Tractate *Sanhedrein*).  Access to a Beit Din signifies absolutely no disrespect to this Court.  On the contrary, CJI's refusal to avail itself of that dispute resolution mechanism is disrespectful to Jewish tradition and to this Court.  To the extent the law permits, the Court should consider directing the parties to obtain from a duly authorized Beit Din responses to questions of Jewish LRCP that the Court determines to be pertinent, subject to the Court's determination after receipt of such responses concerning what if anything should be done as a result.

CJI's refusal to participate in the Beit Din process is itself sufficient grounds to remove CJI from having any role in Touro Synagogue.

**Second**, based on the evidence, CSI reserves the right to prove that CSI and CJI resolved litigation brought by CJI against CSI in the early 1900s by making clear that Touro Synagogue, its cemetery, as well as all of the variously stated appurtenances, paraphernalia, and personal property were owned by CSI and were being borrowed or leased by CJI under the terms of formal written agreements.  This proof too would have been sufficient in itself as a matter of Jewish LRCP to lay ownership and control of the Rimonim in CSI, or, again, at a minimum to have prompted questions and a discussion and, in the event the dispute could not be resolved, then resort to a Beit Din, as discussed above.

***Third***, the indenture with lease (1903, 1908) demonstrates that CJI as lessee undertook the express covenant and condition to "cause [the Newport Synagogue, its paraphernalia, and appurtenances] . . . to be used and occupied for the maintenance therein of the usual and stated religious services according to the ritual rites and customs of the Orthodox Spanish and Portug[u]ese Jews as at this time practiced in the Synagogue of the Congregation Shearith Israel, in the City of New York".  As a matter of Jewish LRCP and otherwise, CSI would never have permitted sale of the Rimonim under the circumstances presented here – and were there a question about that, as a matter of Jewish LRCP, CJI should have approached CSI and, in the event of a remaining dispute, agreed to take the matter to a Beit Din.

***Fourth***, the indenture with lease (1903, 1908) further requires that, "before any Minister can officiate in said Synagogue, his appointment must be approved of in writing by a majority of the" CSI trustees.  As a matter of Jewish LRCP, under the circumstances presented no Orthodox Rabbi would approve of such a sale, certainly not without getting CSI's approval or resolving any dispute with CSI before a Beit Din.

***Fifth***, Jewish LRCP as applicable to the issues here includes the Jewish ritual concept of ***Tashmishei Kedusha.***  Regardless of the resolution of any dispute about ownership as between CSI and CJI, CJI could not have sold the Rimonim under the circumstances presented even if it owned them, as a matter of Jewish LRCP.  Contemporaneous and prior authoritative Jewish LRCP determined that rimonim are what is called *tashmishei kedusha* and hence were clearly among the appurtenances and paraphernalia of the Touro Synagogue and the Torah scrolls therein.  The concept of *tashmishei kedusha* is used in reference to objects that come in contact with or are used to adorn and honor sacred objects in Jewish ritual, in this case, the Torah.  Rimonim are without question *tashmishei kedusha*.  Jewish legal literature makes a number of references to silver adorning sacred ritual objects, including Maimonides from the 12th Century

3

and the normative compilation of Jewish law by leading Sephardic and Ashkenazic Rabbis of the last 600 years, Rabbi Joseph Caro and Rabbi Moses Isserlis, in their seminal work, the *Shulhan Arukh*.

As *tashmishei kedusha*, the Rimonim could not be sold under basic Jewish LRCP under the circumstances presented here. There are very few exceptions to the principle that *tashmishei kedusha* cannot be sold, and none of those exceptions was remotely applicable here. Possible exceptions were recognized by Jewish law dating from the Mishnaic and Talmudic period, or between 200 and 600 C.E. (delineated in Tractate *Megilla*), and continue to be authoritative today. Those exceptions require that the *tashmishei kedusha* be sold only for the purchase of something of greater ritual holiness, such as a Torah; and *tashmishei kedusha* could be sold under certain circumstances if by doing so it would enable orphans to marry. Exceptions such as these are not vague categories of exceptions; they are inapplicable here. Those determining Jewish law today do not have leeway to create their own exceptions. Under the circumstances presented by CJI, it would have violated Jewish LRCP were CJI to have sold the Rimonim.

**Sixth**, as a matter of Jewish LRCP, a person or institution cannot sell what he or it does not own. That one cannot sell what he or she does not own is a fundamental precept of Biblical law, which has proven to be one of the foundations of Western law. Furthermore, under the circumstances presented by CJI, sale of the Rimonim would have violated relevant Jewish LRCP insofar as and to the extent that a sale would have violated any of the pertinent documents or legal instruments between or governing the parties, including the indenture with leases, the federal government agreement, etc.

**Seventh**, even if CJI owned the Rimonim, and it does not, CJI did not present any justification for selling the Rimonim under Jewish LRCP. Even if CJI owned the Rimonim and had argued that financial needs justified their sale, financial needs such as those claimed are

4

wholly insufficient to justify selling the Rimonim for failure to fit within the narrow and limited exceptions described above *and* because CSI was willing to address CJI's financial condition. Most Orthodox Jewish congregations of which I am aware face fiscal challenges. None that CSI is aware of has taken to selling ritual objects. Moreover, prior to CJI's suing CSI, CSI made offered to CJI of help as a way to avoid this dispute altogether. The economics of CSI's proposal were that CSI or various of its members or trustees would commit to provide up to $75,000 a year to Touro for 10 years. However, CJI rejected the economic proposal. A synagogue's budget deficit is not a permissible reason to sell Tashmishei Kedusha, especially when other congregations offer financial support. Sale of the Rimonim for a purpose such as removing the burden of periodic fundraising to maintain CJI in a particular financial condition or for paying off a debt of CJI, especially one unrelated to the fundamental religious purposes of the Touro Synagogue, would have contravened Jewish LRCP as well.

***Eighth***, CJI has taken a number of incorrect positions. These include references to the great Jewish thinker and legal decisor Maimonides (known in Hebrew by the acronym of his name, Rambam). CJI asserts, for example, that "there's a lot of Rambam that we don't follow today" (Dep. of Zachary S. Edinger, May 1, 2014, p. 102), and CJI has raised questions about Maimonides's views of women and certain minorities (*id.*, p. 103). CJI's questions and assertions are wrong and misleading as a matter of Jewish LRCP. Moses Maimonides, or the Rambam, lived in the 11-12th Centuries and is a venerated giant of Jewish law and scholarship. He wrote in a variety of contexts: He wrote seminal works of Jewish law. He also wrote on philosophical, scientific, medical, and other subjects as well. Not all of his writings have the same authoritative, normative value; indeed, even within his monumental work on Jewish law he has certain non-normative discussions. Students of Maimonides, and of the myriad commentators on Maimonides in the eight centuries since his death, including any Orthodox

5

Rabbi, would know that as well.  Certain Maimonidean writings never had normative value, whereas Maimonides' legal writings on Jewish prayer and synagogue ritual are as normative today as they ever were.  For example, Maimonides' view of Aristotelian metaphysics was never taken to be doctrinal or normative Jewish law; his views on *Tashmishei Kedusha,* on the other hand, are considered by Jewish religious decisors to be as normative today as they ever were.  On subjects of normative Jewish law, normative Orthodoxy, including that practiced by CSI, follows Maimonides relating to the issues relevant here, including rules in or about communal worship and practices.  Indeed, Maimonides's legal framework and rules on these subjects echoes those of the Talmud, and the views of Maimonides himself were echoed in the seminal Jewish legal codification, the *Shulchan Aruch*, described above.

      CSI reserves the right to adduce or not adduce this proof, or to adduce or not adduce any other proof, in response to CJI's claims and proof.

                                      CONGREGATION SHEARITH ISRAEL,

                                      By its Attorneys,
/s/ Deming E. Sherman
Deming E. Sherman (#1138)
EDWARDS WILDMAN PALMER LLP
2800 Financial Plaza
Providence, RI  02903
(401) 274-9200
(401) 276-6611
E-mail: dsherman@edwardswildman.com

/s/ Louis M. Solomon
Louis M. Solomon (Admitted Pro Hac Vice)
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY  10281
Tel.:  1 (212) 504-6600
Fax:   1 (212) 504-6666
E-mail: Louis.Solomon@cwt.com

November 26, 2014

6

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CONGREGATION JESHUAT ISRAEL, : | |
| Plaintiff, : | |
| v. : | C. A. No. 12-822-M (LDA) |
| CONGREGATION SHEARITH ISRAEL, : | |
| Defendant. : | |

**DEFENDANT'S AMENDED INITIAL DISCLOSURES
PURSUANT TO FED. R. CIV. P. 26(a)**

Defendant Congregation Shearith Israel ("CSI") hereby submits its amended initial disclosures as follows:

**Rule 26(a)(1)(A)(i)**

The name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claim or defenses, unless the use would be solely for impeachment.

Initial Disclosures

1. Rabbi Marc D. Angel, New York, New York, who may be reached through defendant's counsel. A description of Rabbi Angel's background, credentials and information relating to the Rimonim and other issues in this case is set forth in his Declaration[1] filed in Congregation Shearith Israel v. Congregation Jeshuat Israel, No. 12-Civ. 8406 (MGC) (hereinafter referred to as the "New York action").

---

[1] Plaintiff's counsel have copies of the Declarations referred to in this Initial Disclosure.

2. Zachary Edinger, New York, New York, who may be reached through defendant's counsel. A description of Mr. Edinger's background, credentials, and information relating to the Rimonim and other issues in this case is set forth in his Declaration filed in the New York action.

3. Michael Katz, Esq., New York, New York, who may be reached through defendant's counsel. A description of Mr. Katz's background, credentials and information relating to this case is set forth in his Declaration filed in the New York action.

4. Louis M. Solomon, Esq., New York, New York, defendant's counsel. A description of Mr. Solomon's credentials and information relating to the events, including the negotiations and the Standstill Agreement, leading up to this case is set forth in his Declaration filed in the New York action.

5. Deming E. Sherman, Esq., Providence, Rhode Island, defendant's counsel. A description of Mr. Sherman's credentials and information relating to the Standstill Agreement is set forth in his Declaration filed in the New York action.

6. Rabbi Hayyim Angel, Rabbi of Shearith Israel, New York, New York, who may be reached through defendant's counsel. Rabbi Hayyim has information concerning the course of dealings between the parties (CSI and Congregation Jeshuat Israel ("CJI")), and the ritual, rites, and customs of the Orthodox Spanish and Portuguese Jews as practiced and observed in the Synagogue of CSI.

7. Rabbi Ira Rohde, Reader of Services of Shearith Israel, New York, New York, who may be reached through defendant's counsel. Rabbi Rohde has information about the course of dealings between the parties, and the ritual, rites, and customs of the Orthodox Spanish and Portuguese Jews as practiced and observed in the Synagogue of CSI.

8.Reverend Philip Sherman, Reader of Services of Shearith Israel, New York, New York, who may be reached through defendant's counsel. Rabbi Sherman has information about course of dealings between the parties, and the ritual, rites, and customs of the Orthodox Spanish and Portuguese Jews as practiced and observed in the Synagogue of CSI.

9.Avery Neumark, Shearith Israel Trustee and Head of the Board's Ritual Committee, New York, New York, who may be reached through defendant's counsel. Mr. Neumark has information about the course of dealings between the parties; ownership of the Rimonim; ritual, rites, and customs of the Orthodox Spanish and Portuguese Jews as practiced and observed in the Synagogue of CST.

10.Dr. Leonard Groopman, Member of CSI, New York, New York, and a former liaison to Touro Synagogue on behalf of the congregation, who may be reached through defendant's counsel. Dr. Groopman has information about the history of dealings between the parties.

11.Jonathan de Sala Mendes, Member of Shearith Israel, New York, New York, honorary (former) board member, descendant of Abraham Pereira Mendes (Minister of Jeshuat Israel from 1883-1893,) at various times liaison to Touro Synagogue on behalf of the congregation, who may be reached through defendant's counsel. Mr. Mendes has information about the history of dealings between the parties.

12.Dr. Dennis B. Freilich, former President of CSI, New York, New York, who may be reached through defendant's counsel, has information about the history of dealings between the parties.

13.Alvin Deutsch, New York, New York – former president of CSI and onetime liaison to Touro Synagogue on behalf of the congregation, who may be reached through

defendant's counsel.  Mr. Deutsch has information about the history of dealings between the parties.

14.     Peter Neustadter, board member and former president of CSI – history of course of dealings between the parties.

15.     David J. Nathan, president of CSI and descendant of Seixas family, New York, New York, who may be reached through defendant's counsel.  Mr. Nathan has information about the history and current course of dealings between the parties.

16.     Dr. Alan Singer, former Executive Director of CSI, who lives in New Jersey and who may be reached through defendant's counsel.  Dr. Singer has information about the history of dealings between the parties.

17.     Bernard Aidinoff, board member of the Touro Synagogue Foundation – believed to be a New York resident.  Mr. Aidinoff has information about the presence of Touro in New York and on the history and current course of dealings between the parties.

18.     Roy Zuckerberg, Honorary Trustee, former board member of CSI, New York, New York, who may be reached through defendant's counsel.  Mr. Zuckerberg has information about the course of dealings between the parties.

19.     Ralph Sutton, current Shearith Israel Board of Trustee member, New York, New York, who may be reached through defendant's counsel.  Mr. Sutton has information about the issue of the breach by CJI of the Standstill Agreement.

20.     Ruth Yasky, Shearith Israel bookkeeper, New York, New York, who may be reached through defendant's counsel.  Ms. Yasky has information about CJI's payment of rent to CSI.

21.     Rabbi Dr. Meir Y. Soloveichik, current Rabbi of Shearith Israel, New York, New York, who may be reached through defendant's counsel.  Rabbi Soloveichik has information on

the course of dealing between the parties as well as on the history of the ritual, rites, and customs of the Orthodox Spanish and Portuguese Jews as practiced and observed by CJI during a relevant period, all as more fully set forth in the FRCP 44.1 disclosure made in this action.

22. Zee Anolik, 16 Division Street, Newport, Rhode Island, is a neighbor and former congregant at Touro Synagogue. Ms. Anolik has been involved in various zoning and other disputes relating to the Touro Synagogue, the Loeb Center, Levi-Gale House, and related entities, and has knowledge of the activities of Congregation Jeshuat Israel, the services at Touro Synagogue and actions of related entitles.

Congregation Shearith Israel believes there may be other potential witnesses whose identities may be ascertained as discovery progresses.

**Rule 26(a)(1)(A)(ii)**

A copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

Initial Disclosures

1. Documents listed in the Document Compendium[2] filed by CSI in the New York action.

2. Copies of documents from the state archives relating to the litigation between CJI and CSI 1902-1903, David v. Levy, No. 622, Supreme Court, Appellate Division.

3. Copies of documents from the federal archives relating to the litigation between CJI and CSI 1902-1903, David v. Levy, No. 2613, Circuit Court, Rhode Island District.

---

[2] Plaintiff's counsel have a copy of the Document Compendium.

4. Application for a State Preservation grant by the Touro Synagogue Foundation, July 30, 2004.

5. Agreement between CJI, the Touro Synagogue Foundation and the Loeb Foundation, May 11, 2006.

6. 1893 Abstract of Title regarding Newport Land Records transferring the Touro Synagogue and other properties to CSI.

7. Deeds of transfer of Touro Synagogue and other properties to CSI, 1894.

8. Newport Zoning Board records relating to applications of CJI, Touro Synagogue, et al. for zoning relief.

9. Records from Secretary of State and Public Laws relating to CJI's Charter and Charter of Touro Synagogue Foundation.

10. Various documents received from Zee Anolik relating to the Touro Synagogue, CJI and related entities (not yet indexed).

In addition to these documents, there may be relevant documents in the archives of CSI that CSI will undertake to find and produce.

### Rule 26(a)(1)(A)(iii)

A computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents of other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

### Initial Disclosures

Defendant's damages are not yet fully known and will be supplemented in a timely fashion.

Rule 26(a)(1)(A)(iv)

For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Initial Disclosures

None.

CONGREGATION SHEARITH ISRAEL,

By its Attorneys,


/s/ Deming E. Sherman
Deming E. Sherman (#1138)
LOCKE LORD EDWARDS
2800 Financial Plaza
Providence, RI 02903
Phone:  401-274-9200
Fax:  401-276-6611
E-mail:  deming.sherman@lockelord.com


/s/ Louis M. Solomon
Louis M. Solomon, Esq.(Admitted Pro Hac Vice)
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281
Tel.:  1 (212) 504-6600
Fax:  1 (212) 504-6666
E-mail:  Louis.Solomon@cwt.com

March 23, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of March, 2015, I caused a copy of the within Defendant's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a) to be mailed to the following counsel of record:

Steven E. Snow, Esq.
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

Gary P. Naftalis, Esq.
Jonathan M. Wagner, Esq.
Tobias B. Jacoby, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

/s/ Louis M. Solomon

# EXHIBIT C

**FROM:** **CONGREGATION SHEARITH ISRAEL**
8 West 70th Street
New York, New York, 10023
www.shearithisrael.org

Contact: Barbara Reiss Tel: 212.873.0300 x215
Email: breiss@shearithisrael.org

**FOR IMMEDIATE RELEASE**

## Shearith Israel Hires Renowned Rabbi; Creates Position of Distinguished Rabbinic Fellow

*Rabbi Meir Y. Soloveichik, as Rabbi, and Rabbi Richard Hidary, as Distinguished Rabbinic Fellow, to Join Historic Upper West Side Synagogue*

**NEW YORK, June 10, 2013** – Shearith Israel, America's oldest Jewish Congregation, announced the selection of Rabbi Meir Y. Soloveichik, a leading Jewish scholar and intellectual, as the new Rabbi and spiritual leader of the 359-year-old synagogue, founded in 1654 by Spanish and Portuguese Jews fleeing persecution in Brazil.

Additionally, Shearith Israel announced the establishment of the Shearith Israel Distinguished Rabbinic Fellow, and has named outstanding scholar Rabbi Richard Hidary as its inaugural Fellow.

Founded in the Western Sephardic tradition, Shearith Israel is notable for its diverse membership, with congregants descending from over 50 countries, including roughly equal numbers of Sephardic and Ashkenazic Jews.

"We are thrilled that these two esteemed rabbis will be joining our congregation," said David Nathan, Parnas/President of Congregation Shearith Israel. "We look forward to watching our community continue to grow and flourish under their leadership."

One of the Jewish world's leading Jewish thinkers and intellectuals, Rabbi Soloveichik is director of the Straus Center for Torah and Western Thought at Yeshiva University and most recently served as Associate Rabbi at Congregation Kehilath Jeshurun on New York's Upper East Side. He received his rabbinic ordination from Rabbi Isaac Elchanan Theological Seminary of Yeshiva University and holds a Ph.D in Religion from Princeton University. Over the past year, Rabbi Soloveichik served as a scholar in residence at Shearith Israel, delivering a multi-part series exploring the contribution of Jews and Jewish ideas and values in the shaping the American experience.

"I am humbled and deeply honored to have been asked to serve the congregants of Shearith Israel, a Congregation with an incomparable history, where some of America's most distinguished rabbis have pastored and preached," Rabbi Soloveichik said. "More than any other synagogue, Shearith Israel embodies the profound link between the Torah and the American idea, as well as the extraordinary impact that Jews and Judaism have had on our country. Our goal is to build on this legacy by charting a future for Shearith Israel worthy of its history." Added Rabbi Soloveichik, I wish Rabbi Hayyim Angel" -- the Congregation's former Rabbi – "the very best in his intellectual and other pursuits, and I am very excited to be able to work with Rabbi Hidary (whom I know from Stern College, where we both teach and whom I admire greatly) and the other talented Rabbis and staff at the Synagogue.

Rabbi Hidary was most recently Assistant Rabbi at the Sephardic Synagogue of Brooklyn, where he served for eight years under the mentorship of Rabbi Moshe Shamah. In addition, he is Assistant Professor of Judaic studies at Stern College for Women of Yeshiva University and the author of *Dispute for the Sake of Heaven: Legal Pluralism in The Talmud* (Brown University, 2010). Rabbi Hidary received his rabbinic ordination from the Israeli Chief Rabbinate at the Shehebar Sephardic Center in Jerusalem and earned a Ph.D in Hebrew and Judaic Studies from New York University.

"It is with great excitement and humility that I join the leadership of Shearith Israel, along with Rabbi Soloveichik, to whom I have become close as we plan for the future," Rabbi Hidary said. "The great Sephardic luminaries, from Maimonides to the present day, have always taught a Judaism of commitment, compassion, inclusiveness and inspiration. I hope to continue in their path, and, along with the rest of our talented staff and devoted lay leaders, strengthen our community with these values."

**About Shearith Israel**

Congregation Shearith Israel, America's first Jewish congregation, was founded in1654 by 23 Jews of Spanish and Portuguese descent. Today, Jews of all backgrounds make up this welcoming, inclusive and traditional community. Located on Central Park West at 70th Street in Manhattan, Shearith Israel stands as a pillar of American Jewish life, setting high ritual, cultural, educational, charitable and spiritual standards for the entire community. To learn more about Shearith Israel history and view what's happening today, visit shearithisrael.org.

# # #