**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

CONGREGATION JESHUAT ISRAEL,  :
                                :

        Plaintiff,       :

                                :

        v.             :          C.A. No. 12-822M

                                :

CONGREGATION SHEARITH ISRAEL,  :

                                :

        Defendant.     :

**DEFENDANT CONGREGATION SHEARITH ISRAEL'S
MOTION TO CONFORM ITS AMENDED ANSWER AND COUNTERCLAIMS
TO THE EVIDENCE ADDUCED AT TRIAL**

Deming E. Sherman (#1138)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI  02903
Tel.: (401) 274-9200
Fax: (401) 276-6611
E-mail: Deming.Sherman@lockelord.com

Louis M. Solomon (Admitted *Pro Hac Vice*)
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY  10281
Tel.: (212) 504-6600
Fax: (212) 504-6666
E-mail: Louis.Solomon@cwt.com

*Attorneys for Defendant
Congregation Shearith Israel*

June 29, 2015

Defendant Congregation Shearith Israel ("Shearith Israel") respectfully moves, under Fed. R. Civ. P. 15(b) and LR Cv 15, to conform its Amended Answer and Counterclaims (ECF No. 8) to the evidence adduced at trial.

## INTRODUCTION

Shearith Israel seeks to make the following amendments to certain portions of its Amended Answer and Counterclaims (ECF No. 8) that were pleaded on information and belief based on information available at the time. The proposed amendment is being done in order to conform Shearith Israel's pleading to the evidence presented at trial (text to be removed is crossed out; text to be added is bolded and italicized):

- "During the operation of Touro Synagogue in the 18th century, the Synagogue used Torah scrolls, including those loaned by Shearith Israel in New York. ~~These scrolls were all presumably~~ *Based on the evidence adduced at trial, some of these scrolls (not those loaned by Shearith Israel), were, by 1769,* adorned with silver finial bells, or Rimonim. Two pairs of Rimonim possessed *thereafter but not owned* by Yeshuat Israel were crafted by the silversmith Myer Myers of New York." (Counterclaims ¶ 12).

- "By 1822, Yeshuat Israel~~, original possessor of the Rimonim,~~ ceased to exist." (Counterclaims ¶ 15).

- "After 1822, the Synagogue, cemetery, and ritual items of Yeshuat Israel were left in the care of Stephen Gould, who took care of the property for several years. Thereafter, ownership of the Synagogue and real and personal property, including the Rimonim *(assuming, contrary to the proof at trial, they were at that time the property of the colonial Yeshuat Israel)*, were conveyed to Shearith Israel. For example, in 1826, Moses Lopez, then residing in New York, wrote to Stephen Gould that the "building is now considered owned at present by the Hebrew Society of this city" [i.e., Congregation Shearith Israel] and that he was "determined to send for the keys and place them in [the trustees] hands that they may do what they please with them." (Counterclaims ¶ 16).

- ~~"The Rimonim should be returned forthwith to the possession of Defendant in New York or to such other place as Defendant determines absent an agreement between Shearith Israel and MFA on terms satisfactory to Shearith Israel.~~ *Shearith Israel will consent to a long-term loan of the Rimonim to any congregation worshipping at the Touro Synagogue in accordance with the stipulations contained in the Indenture with Lease and will agree to continue this loan as long as an active Jewish congregation worships at Touro Synagogue in accordance with the stipulations*

***contained in the Indenture with Lease, and subject to other terms satisfactory to Shearith Israel.***" (Counterclaims ¶ 52).

- "As a result, Jeshuat Israel*, as a corporate entity,* should be removed as lessee of Touro Synagogue and related real property, and as lessee of all personal property, including all religious objects, owned by Shearith Israel. ***Shearith Israel does not and will not seek eviction of the individual congregants of Jeshuat Israel who seek to worship at the Touro Synagogue in accordance with the stipulations contained in the Indenture with Lease.***" (Counterclaims ¶ 63).

The proposed amended pleading is attached hereto as Exhibit A.

## ARGUMENT

The above amendments are appropriate in light of Plaintiff Congregation Jeshuat Israel's ("CJI") repeated and knowing misrepresentations, both during and pre-trial, of Shearith Israel's factual allegations, legal theories, and claims for relief. CJI has continued to make these misrepresentations months and even years after receiving notice of Shearith Israel's position on these issues. The evidence adduced at trial, much of which was disclosed to CJI long before trial began, has confirmed that: (1) Shearith Israel owns the rimonim, and there is no conclusive proof of who possessed the rimonim at the time they were ordered and paid for by Shearith Israel; (2) Shearith Israel seeks to ensure that the rimonim remain at Touro Synagogue, and stay in use, as long as an active congregation worships there in accordance with the stipulations contained in the Indenture with Lease; and (3) Shearith Israel has never sought and would never seek to evict the CJI congregants who worship at Touro Synagogue.

This evidence demonstrated the deliberate nature of CJI's mischaracterization of Shearith Israel's position. CJI had known since 2013 that Shearith Israel had never sought (and would never seek) to evict CJI's individual congregants. But it repeatedly represented to this Court and the public that Shearith Israel wants to deny individuals access to Touro Synagogue. At trial CJI continued its misrepresentations. Likewise, CJI misrepresented that Shearith Israel came to Rhode Island to whisk the rimonim away from Newport, when the truth is precisely the opposite.

Shearith Israel seeks to preserve these holy objects, which have become intertwined with Touro Synagogue, while CJI wants to sell a piece of Touro's history to the highest bidder.

Shearith Israel now seeks to amend its Amended Answer and Counterclaim to conform its pleading to the evidence at trial. Such amendment is proper because each of the amendments detailed above was presented in Shearith Israel's Pre-Trial Memorandum (ECF No. 70). The law is clear that "a final pretrial order that supersede[s] all prior pleadings and controll[s] the subsequent course of the action." *Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 474 (2007) (citations and quotation marks omitted). There was no pretrial order in this matter, but the Court's final scheduling order required the parties to submit pretrial memoranda detailing their respective legal positions. *See* ECF No. 43. These pretrial memoranda effectively functioned as the pretrial order and contained all of the issues and legal theories to be tried between the parties. As such, CJI can claim no surprise or prejudice to Shearith Israel's amendments.

Moreover, initial pleadings are deemed automatically conformed to all issues tried by the consent of the parties. *See Sullivan v. Young Bros. & Co.*, 91 F.3d 242, 248 (1st Cir. 1996) ("we find that the express warranty arising from the VPIS was tried by implied, if not express, consent of the parties and, thus, we treat it in all respects as if it had been raised in the pleadings") (*quoting* Fed. Prac. & Proc. Civ. § 1493 (2d ed.)) (internal quotations omitted). Actual amendment at this time will put an end to CJI's misrepresentations. CJI cannot now claim prejudice as to any of these amendments, as it had ample pre-trial notice of the above positions. Moreover, CJI consented to trying each of these issues on the merits: CJI did not object when Shearith Israel introduced evidence on each of these issues at trial, and in fact, actively sought to address the issues on the merits.

"A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue." Fed. R. Civ. P. 15(b)(2). "[T]he trial court may and should liberally allow amendments to the pleadings if prejudice does not result." *Conjugal P'ship Comprised by Joseph Jones & Verneta G. Jones v. Conjugal P'ship Comprised of Arthur Pineda & Toni Pineda*, 22 F.3d 391, 400 (1st Cir. 1994) (construing FRCP 15(b) and affirming the trial court's ruling allowing party to conform its Answer to trial evidence). *See also Foskey v. U.S.*, 490 F. Supp. 1047, 1059 (D.R.I. 1979) ("the court may freely allow amendment if it serves the presentation of the action and the objecting party would not be prejudiced"). A district court can, even *sua sponte*, conform a party's pleadings to the trial evidence. *See Antilles Cement Corp. v. Fortuno*, 670 F.3d 310, 319 (1st Cir. 2012).

If issues beyond, or contrary to, the pleadings are raised at trial without objection by opposing counsel, those issues must be treated as if they were raised in the initial pleadings. *Conjugal P'ship*, 22 F.3d at 400 ("when [a claim or defense] that has not been raised in the pleadings has actually been tried by implied consent of the parties, the court must treat the [claim or] defense as if it had been raised in the original responsive pleading."). *See also Borden, Inc. v. Florida E. Coast Ry. Co.*, 772 F.2d 750, 758 (11th Cir. 1985) ("When issues outside the pleadings are tried by the express or implied consent of the parties, . . . **Rule 15(b) requires that the amendment be allowed**") (emphasis added).

A party cannot show it was prejudiced by such an amendment if the new issues were raised at trial without objection. *See Marston v. Am. Emp. Ins. Co.*, 439 F.2d 1035, 1042 (1st Cir. 1971) ("These new claims were fully litigated without objection before amendment was sought. American was not prejudiced."); *see also Conjugal P'ship*, 22 F.3d at 400-01 ("'One sign of implied consent is that issues not raised by the pleadings are presented and argued

-4-

without proper objection by opposing counsel.'") (quoting *Matter of Prescott*, 805 F.2d 719, 725 (7th Cir.1986)).

A party can likewise not show prejudice if the issues subject to amendment were addressed in pre-trial briefing. *See, e.g.*, *Owner-Operator Indep. Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc.*, 537 F.3d 1184, 1190 (10th Cir. 2008) (allowing amendment because "this issue was . . . addressed by both parties in their trial briefs"). It should also be self-evident that any motion to conform the pleadings to the evidence actually adduced at trial cannot be made before the trial record is complete, thus there can be no argument that Shearith Israel's motion is in any way untimely.

Courts allow parties to amend both factual assertions and legal claims. *See, e.g.*, *Muhs v. River Rats, Inc.*, 586 F. Supp. 2d 1364, 1375 (S.D. Ga. 2008) ("The Court may apply Rule 15 to correct facts that were misstated in the pleadings"); *N. L. R. B. v. Merrill*, 388 F.2d 514, 519 (10th Cir. 1968) (allowing amendment of factual assertions); *Hodgson v. Colonnades, Inc.*, 472 F.2d 42, 47 (5th Cir. 1973) (same); *Hotel On the Cay Time-Sharing Ass'n, Inc. v. Kilberg*, 2000 WL 34019282, at *7 n. 2 (D.R.I. Apr. 6, 2000) (allowing amendment of legal claims and relief sought); *Foskey*, 490 F. Supp. at 1059 (same).

In its initial filing, Shearith Israel alleged "on information and belief" that the colonial Yeshuat Israel was the "original possessor" of the rimonim. *See* Amended Answer & Counterclaim (ECF No. 8) at pg. 6; ¶ 15. Subsequent expert investigation disproved this initial "on information and belief" position. Dr. Mann for example disclosed in her expert report her conclusion that the rimonim were initially made for Shearith Israel. *See* Expert Report of Dr. Mann at 4-6 (detailing that "Myer Myers made . . . two pairs of finials for Shearith Israel, accounting for two out of the total five pairs of finials extant."). Thus, CJI has known since at

least November 26, 2014 – the date it received Dr. Mann's Report – that Shearith Israel would argue that Shearith Israel, not the colonial Yeshuat Israel, was the original owner of the rimonim – and "possessed" the rimonim as a result of that ownership.  CJI questioned Dr. Mann extensively on this conclusion during her deposition on December 31, 2014.

> Q.  So are you saying that CSI was the owner of those two sets of rimmonim from the start?
> A.  Yes.
> Q.  And are you saying that they were the possessor of those two sets of rimmonim for --
> A.  Is that a legal term that I don't know?
> Q.  **No, just who possessed it first**?
> A.  **CSI**.

*See, e.g.*, Deposition of Dr. Mann 10:12-13:4 (emphasis added).  CJI then requested and received broad supplemental discovery from Shearith Israel regarding Shearith Israel's ledgers and payments made to Myer Myers.  Both parties briefed this issue extensively in their Pre-Trial Briefs.  *See* CJI Pre-Trial Brief at 7, 30 (ECF No. 69) (arguing that "CYI was the original owner and possessor of the Rimmonim"); CSI Pre-Trial Brief at 9; 48-53 (ECF No. 70) (arguing that "there is no evidence that the Colonial congregation ever owned a pair of the Myers rimonim" and that "Shearith Israel paid for two sets of Myer Myers rimonim").  In light of this extensive briefing on the merits, CJI cannot now claim prejudice.  *Owner-Operator*, 537 F.3d at 1190.

At trial, Dr. Mann testified at length regarding this issue (*see, e.g.*, TR6 123:13-124:13; 146:5-12; 175:24-176:12 (Mann)), and CJI never objected to the introduction of this issue, instead conducting a thorough cross-examination of the factual predicates and documentation underpinning Dr. Mann's opinion (*see, e.g.*, TR7 88:4-109:21 (Mann)).  Likewise, Professor Fisher testified, without objection, that he has seen no primary evidence that the rimonim were at Newport before 1869 (TR8 49:8-49:13 (Fisher)).  There is no evidence to contradict Professor Fisher.  CJI cannot now object to or claim prejudice from Shearith Israel's amending of its

pleadings to conform them to the trial testimony adduced by both parties over the last two weeks. *Foskey*, 490 F. Supp. at 1059 (allowing amendment and noting that "[t]he defense here was fully prepared to meet each and every issue in this case and in no way can this Court find it was prejudiced.").

As to the second issue, Shearith Israel explained in pre-trial briefing that it seeks to keep the rimonim at the Touro Synagogue as long as any congregation worships there in accordance with the stipulations contained in the Indenture with Lease. *See* ECF No. 70 at 26-27, 57-58 (noting that "Shearith Israel has a longstanding commitment to keep the rimonim at Touro Synagogue for as long as a functioning Jewish congregation worships there in conformity with the Indenture with Lease"). Shearith Israel has also elicited testimony at trial that it does not seek to remove the rimonim from the Touro Synagogue.

> Q. Did the board of Shearith Israel ever consider removing the Myer Myers rimonim from the Touro Synagogue?
> A. At what point or ever?
> Q. Ever.
> A. No.
>
> ***
>
> Q. Where does Shearith Israel want the Myer Myers Rimonim that it owns and that have been at the Touro Synagogue?
> A. For 100 years we've wanted them to be in the Touro Synagogue.
> Q. And going forward into the future, where does it want them?
> A. At the Touro Synagogue, as long as there is a viable congregation.

TR5 69:4-69:9; 78:18-79:8 (Katz). CJI did not object to or attempt to rebut this testimony at trial. Moreover, it is hard to imagine how CJI could be prejudiced by Shearith Israel's continued expression of intent to keep the rimonim at the Touro Synagogue so they could be used by CJI's congregants and all other worshippers at Touro Synagogue.

Finally, as to the third issue, Shearith Israel has repeatedly clarified in open court and in subsequent correspondence to CJI that it does not seek to evict the individual CJI congregants

-7-

from the Touro Synagogue.  During a hearing before Judge Cedarbaum in the SDNY on July 25,

2013, nearly two years ago, Shearith Israel made clear that "We have no interest in evicting the

congregants.  We want the congregants.  There is no interest in that."  Ex. B (Cedarbaum Tr.

51:8-10).  Shearith Israel underscored its position in a February 16, 2014 correspondence to CJI.

Shearith Israel also emphasized its position in its pre-trial brief.  *See* ECF No. 70 at 6 ("there is

no issue in this case of displacing or ejecting from the Touro Synagogue any congregant or

worshiper").  At trial, Shearith Israel's February 16, 2014 correspondence was entered as an

exhibit, and testimony about it was elicited by both parties.  *See* D458 ("we are not seeking

eviction of the congregants.  In fact, we see no present dispute with the congregants at all.  As

you know, our dispute is with CJI and CJI's conduct."); *see also* TR2 154:24-155:24 (Bazarsky);

TR3 27:24-30:1 (Bazarsky).  CJI did not object to this exhibit or the attendant testimony (it even

included the letter on its exhibit list as P253).

In light of the fact that Shearith Israel has repeatedly confirmed its position regarding the

original ownership of the rimonim, its eviction claim, and its intentions to keep the rimonim at

Touro Synagogue, and has elicited testimony regarding all of these issues in open court without

objection from CJI, Shearith Israel's proposed amendment is proper, and would not prejudice

CJI.  *See Owner-Operator*, 537 F.3d at 1190; *Foskey*, 490 F. Supp. at 1059

## CONCLUSION

For the foregoing reason, the Court should grant Shearith Israel's Motion and permit the

filing of the hereto attached Second Amended Answer and Counterclaims.


DEFENDANT CONGREGATION SHEARITH ISRAEL,

By its Attorneys,

/s/ Deming E. Sherman
Deming E. Sherman (#1138)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI  02903
(401) 274-9200
(401) 276-6611
E-mail: deming.sherman@lockelord.com

/s/ Louis M. Solomon
Louis M. Solomon (Admitted *Pro Hac Vice*)
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY  10281
Tel.: (212) 504-6600
Fax: (212) 504-6666
E-mail: Louis.Solomon@cwt.com

June 29, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of June, 2015, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.


/s/ Louis M. Solomon